759 A.2d 568 (2000)
In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware Dennis A. REARDON, Respondent.
Nos. 384, 1998, 68 & 95, 1997.
Supreme Court of Delaware.
Submitted: July 25, 2000.
Decided: September 6, 2000.
Dennis L. Schrader, Wilson, Halbrook & Bayard, Georgetown, Delaware, for respondent.
Mary M. Johnston, Chief Disciplinary Counsel, Wilmington, Delaware, for the Office of Disciplinary Counsel.
Before VEASEY, Chief Justice, HOLLAND, and BERGER, Justices.
*569 PER CURIAM.
The matter before the Court is a lawyer disciplinary proceeding. This Court has weighed the findings of the Board on Professional Responsibility (Board), the aggravating and mitigating factors, the ABA Standards for Imposing Lawyer Sanctions, and other disciplinary cases. A central determination in this case is whether the specific instances of misconduct found in the current case, when juxtaposed with the lawyer's prior record of ethical violations, constitutes a "pattern" of neglect warranting the imposition of the sanction of suspension. We hold that the record in this case does not establish a "pattern."
A panel of the Board issued its Final Report with regard to two cases of professional misconduct involving the respondent, Dennis A. Reardon. Based upon the stipulation of facts presented jointly by Reardon and the Office of Disciplinary Counsel (ODC), in addition to testimony presented at a hearing, the Board found that Reardon's conduct in both cases violated Rule 1.3 of the Delaware Lawyers' Rules of Professional Conduct (DLRPC). The Board recommended that Reardon be suspended from the practice of law for six months to be followed by a two year period of probation subject to certain conditions including a practice monitor and quarterly reporting. Additionally, the Board recommended permanent limitations on Reardon's practice of law.
Reardon filed in this Court objections to the Board's Final Report, contending that the sanction of suspension recommended by the Board was inappropriate. ODC responded to Reardon's objections. After hearing oral argument, the Court requested the parties to submit supplemental briefing on the issue of sanctions specifically considering the ABA Standards for Imposing Lawyer Sanctions (ABA Standards) and decisions applying the ABA Standards.
Upon careful consideration of all of the parties' submissions, the Court has determined that the Board's findings of violations should be accepted. The Court has further determined that the following sanctions should be imposed: (a) a public reprimand; (b) a two year period of public probation subject to certain strict terms, conditions, and limitations; and (c) the institution of permanent conditions and limitations on Reardon's practice of law in the future.

Facts
ODC filed a petition with the Board alleging eight counts of violations of the DLRPC by Reardon in two separate matters. Reardon filed an answer to the petition and the parties entered into a *570 conditional admission in which Reardon admitted two counts of the eight count petition. The parties also presented to the Board an order of discipline by consent, which proposed limitations on Reardon's practice, a public reprimand, and a one year public probation. The Board accepted the conditional admission and the proposed order of discipline by consent and submitted its recommendation to this Court.
Upon review pursuant to Rule 9(e) of the Rules of the Board on Professional Responsibility,[1] this Court did not accept the conditional admission and proposed order of discipline by consent. Accordingly, the matter was remanded for a new hearing before a new panel. At the second hearing, the ODC and Reardon again presented the Board with a stipulation of facts with respect to both matters.
The following statement of facts is taken from the Board's Final Report:
I. Board Case No. 68, 1997 [Atlantic Roofing Case]
In 1994, John T. Evans (Evans), trading as Atlantic Roofing Company (Atlantic), filed suit against Robert Poinsett (Poinsett) and Scarborough Village (Scarborough) a condominium complex in Sussex County, Delaware. Atlantic had sought to collect $3,755 in damages owed for work done on 48 chimneys at the condominium complex. In defense of the claim, Scarborough raised the quality of Atlantic's workmanship and also asserted a counterclaim relating to additional roofing work done by Atlantic involving certain ridge vents seeking offsetting damages in the amount of $5,760.00. Respondent entered his appearance on behalf of Evans and Atlantic in 1995. He accepted this representation even though civil litigation was not a type of law generally practiced by him. The reason that Respondent accepted the case is that Evans' assistant, Mr. Robert Vignola, had been an acquaintance of Respondent since high school. Evans conceded the faulty nature of the chimney work and informed Respondent that he was willing to fix the problem. However, Evans contended that the ridge vent problem was not his responsibility.
Trial was scheduled in Superior Court for October 18, 1995 and following the pre-trial conference held on October 4, 1995, Respondent approached Scarborough's counsel, Mr. Robert Wolhar (Wolhar), regarding settlement of the case. One day prior to the hearing, Respondent signed a Stipulation of Settlement. Respondent's understanding of the Stipulation was that if Atlantic fixed the chimneys, Scarborough would not pursue its cross-claim for damages on the ridge vents. Respondent signed the Stipulation in reliance upon his understanding that Wolhar would not pursue litigation if Atlantic followed through and fixed the chimneys.
The Stipulation, however, provided that Atlantic would not only fix the chimneys and relinquish its claim for $3,755, but that Atlantic would also repair the ridge vents at Atlantic's own cost and that Scarborough could seek a money judgment if Atlantic failed to make the repairs. When Respondent signed this Stipulation, he indicated that he had discussed it with Evans and Vignola. While Evans had agreed to fix the chimneys, he adamantly denied any responsibility for the ridge vents. Respondent called Wolhar and informed him that Evans would fix the chimneys but not the roofing vents. Evans and Vignola were present in the room when Respondent placed the call to Wolhar, but only heard Respondent's half of the conversation. According to Respondent, Wolhar agreed that if Evans fixed the chimneys, Scarborough would not pursue judgment on the ridge vents. This agreement was not reduced to writing *571 and Wolhar subsequently disputed that such an agreement had been reached.[2]
Atlantic ultimately repaired the chimneys and by letter dated December 4th, Wolhar informed Scarborough that the chimney work had been completed and asked permission to dismiss the case. Instead, Scarborough insisted that Atlantic comply with the terms of the Stipulation and fix the roof vents as well. By letter dated December 29, 1995, Wolhar informed Respondent that Scarborough would move to have judgment entered pursuant to the Stipulation if Evans failed to pay the amounts due to fix the ridge vents. In January of 1996, Scarborough filed a motion for default judgment. The hearing was scheduled for February 16, 1996. Respondent did not appear at this hearing and did not advise Evans of the consequences of a default judgment. On February 16, 1996, the Superior Court entered a default judgment awarding Scarborough $7,944 plus costs based upon Atlantic's failure to comply with the Stipulation and Order. In June, 1996, Scarborough levied on certain property of Evans and eventually sold it at a Sheriff's sale. There was a subsequent proceeding in Superior Court under Civil Rule 60(b) for relief from the judgment. During that proceeding, Wolhar failed to acknowledge that he and Respondent had had an understanding contrary to the terms set forth in the Stipulation. Respondent has admitted that his actions in this matter constitute a violation of the Delaware Lawyers' Rules of Professional Conduct (DLRPC) Rule 1.3. This rule provides that a lawyer shall act with reasonable diligence and promptness in representing a client.
II. Board Case No. 95, 1997 [Pierce and Miller Case]
In 1993, Respondent represented Harry N. Miller, III (Miller) on several traffic charges relating to an accident that he had caused in September of 1993. All charges were nolle prossed except for the charge of reckless driving of which Miller was found guilty.
In September, 1995, Ms. Deborah Pierce (Pierce), the owner of the car Miller was driving when he had the accident, informed the Respondent that she had had a civil complaint that had been filed against Miller and her arising out of the accident. She brought the complaint to Respondent who reviewed it and retained it. The complaint sought to recover compensation for personal injury. The complaint was filed in the Court of Common Pleas on September 1, 1995 and served on Miller and Pierce on September 26, 1995. Pierce provided the Respondent with various documents. Although Respondent did not handle this type of matter as a part of his practice, and in spite of the fact that he had concluded that Pierce had neither a defense to the suit nor insurance coverage, he informed Pierce that he would look into the matter. Subsequent to that time, Pierce called Respondent's office on several occasions. Respondent had failed to make clear to her that he did not represent her or Miller in the matter. Pierce reasonably believed that, based upon documents that Respondent had retained and his statement that he would look into the matter, Respondent would represent her and Miller in the civil suit. On October 20, 1995, a default judgment in the amount of $47,000 was entered against Miller and Pierce. Neither Respondent nor defendants received notice of the default judgment. The default judgment was not made known to Miller until he became *572 eligible for reinstatement of his driver's license in May of 1996.
Again, Respondent has admitted that his conduct in this matter violated DLRPC 1.3.

Board's Findings and Recommendations
The Respondent admitted, and the Board found, that Respondent's conduct in both matters violated DLRPC Rule 1.3. Rule 1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." In considering an appropriate sanction, the Board heard testimony from Reardon and from George B. Smith, Esquire, a tax attorney and CPA who was appointed by this Court in March 1997 in a separate disciplinary matter to serve as Reardon's tax compliance monitor. The Board also received documentary evidence including a transcript from a prior proceeding and letters from a former Superior Court Judge (who was then a sitting judge of that Court)[3] and James E. Liguori, Esquire.
The Board considered the following to be aggravating factors: (a) Reardon's substantial experience in the practice of law;[4] (b) Reardon's commission of multiple offenses; (c) Reardon's pattern of misconduct; (d) the lack of any evidence that Reardon attempted to make restitution for injury caused to his clients; and (e) Reardon's prior disciplinary record. With respect to his prior record, the Board acknowledged that Reardon was privately admonished in 1972, was suspended for a year in 1977, and was publicly reprimanded and placed on probation for two years in 1997.
The Board considered the following factors in mitigation: (a) Reardon's lack of dishonesty or selfish motive; (b) Reardon's cooperation with the disciplinary process; (c) Reardon's character and reputation; and (d) Reardon's remorse. The panel also considered it relevant that the conduct alleged in the two pending cases actually pre-dated the 1997 disciplinary action that resulted in Reardon's two year probation.
In reaching its decision on its recommended sanction, the Board stated:
The Panel has considered the cases offered by both attorneys, including the post-trial submission by Mr. Schrader. The Panel agrees that there is some distinction to be drawn from the actions of the attorneys in those decisions and the Respondent in the instant action. Notwithstanding that distinction, Respondent nevertheless conducted himself *573 in such a fashion that Evans suffered monetary loss. While Pierce and Miller had no defense because of the lack of insurance, it also appeared from the hearing that Respondent believed that he could continue to rely on his informal office practices. Despite the fact that attorneys in Delaware often rely on the word of other members of the Bar in reaching agreements, before signing any document on behalf of a client it is a lawyer's responsibility and duty to his client to exercise his independent judgment in reviewing that document to be sure that it contains the proper provisions.
For the foregoing reasons, it is the recommendation of the Panel that Respondent be given a suspension for a period of six months, which is consistent with Standard 4.42 of the American Bar Association Standards for Imposing Lawyer Sanctions. This [standard] recommends a suspension as an appropriate sanction when "... a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."
The Board further recommended that Reardon be placed on two years of probation following his suspension subject to the following conditions: (a) James E. Liguori, Esquire must act as a practice monitor and consult with Reardon concerning his office practices and procedures; (b) Reardon must file quarterly reports with ODC certifying that he has consulted with Mr. Liguori, including Mr. Liguori's certification that Reardon has complied with the terms of his probation; (c) Reardon must cooperate fully with ODC in its efforts to monitor his compliance with probation; and (d) if ODC determines that Reardon has violated his probation, it may file a petition directly with this Court requesting Reardon's suspension.

Reardon's Objections to the Board's Final Report
Reardon, through his counsel, has filed objections to the Board's Final Report, contending: (a) the actual or potential injury to his clients was outside his control; (b) the weight given to the aggravating factors was inappropriate; and (c) the Board's recommended sanction of suspension is punitive as applied to Reardon in this case.
Specifically, Reardon contends that the Board erred in considering his failure to make restitution to his clients as an aggravating factor. Reardon asserts that his failure to make restitution is not evidence of his indifference but is evidence of the lack of injury caused by his misconduct. With respect to the Atlantic Roofing case, Reardon contends that his client never requested restitution. Reardon further asserts that injury to his client could have been prevented if Wolhar had been candid about the parties' agreement. Reardon appears to argue that the injury to his client was caused ultimately by Wolhar's misconduct and not his own.
With respect to Pierce and Miller, Reardon asserts that, with or without his misconduct, Pierce and Miller had no defense to the personal injury claim and would have had judgment entered against them. Accordingly, because there was no injury caused by his misconduct, there was no basis for Pierce and Miller to request restitution or for Reardon to offer it. Thus, Reardon concludes that the Board erred by weighing the actual or potential injury and the lack of restitution to Reardon's clients as an aggravating factor against him.
Reardon further argues that the Board erred in concluding that the two instances of misconduct constitute a pattern of neglect. Reardon asserts that the two matters were isolated and distinguishable episodes that happened to coincide in time. In the Atlantic Roofing case, Reardon argues, his misconduct involved his misplaced trust in a fellow member of the Delaware Bar. In the Pierce and Miller case, his misconduct involved his failure to make clear his intention to decline representation. To the extent the Board may *574 have relied upon his prior disciplinary record to infer a pattern of misconduct, Reardon contends that the passage of so many years since his previous discipline eliminates any relationship between the earlier misconduct and the present matters. Absent a genuine pattern of misconduct, Reardon argues, the Board's recommended sanction of suspension is not warranted.
Finally, Reardon asserts that, if the intended goal of lawyer discipline is protection of the public  as distinct from a punitive measure  that goal can be accomplished without suspending him. Reardon argues that a public reprimand plus the recommended permanent limitations on his law practice, along with the conditions of his probation including the practice monitor and tax compliance monitor, are more than sufficient mechanisms to ensure that the public is protected from any future misconduct. Any greater penalty, Reardon contends, is simply punitive in nature.
Reardon asserts that this case is distinguishable from other cases in which this Court ordered a lawyer's suspension from the practice of law. Reardon asserts that, unlike his case, our prior precedents imposing suspension as a sanction generally involved lawyer misconduct amounting to fraud or misrepresentation or involved misconduct that was persistent and presented a risk of more serious harm. Furthermore, the suspended lawyers did not accept responsibility for their misconduct or show remorse, as Reardon has. Reardon argues that this case is more analogous to our recent decision in In re Solomon,[5] in which a lawyer was found to have engaged in numerous serious acts of misconduct in eight separate cases but received only a public reprimand, probation, and permanent limitations on her law practice.

ODC's Response to Reardon's Objections
ODC did not separately object to the Board's Final Report but instead filed a response, at the Court's request, to the objections filed by Reardon. In its response, ODC disputes Reardon's position that Wolhar was the real cause of the injury to Reardon's client in the Atlantic Roofing case. ODC concedes that Wolhar's inaction exacerbated the problem but argues that Reardon's failure to ensure the accuracy of the stipulation he signed was, in the first instance, the underlying cause of his client's injury. Moreover, ODC argues that, although Pierce and Miller suffered no monetary loss as a result of Reardon's misconduct, the entry of a default judgment against them is an injury in and of itself, and the default judgment might have been avoided if Reardon had affirmatively declined to accept the representation.
ODC also disputes Reardon's assertion that these two cases are dissimilar and therefore cannot constitute a pattern of misconduct. ODC argues that the pattern established by these two cases is one of inattention, carelessness, and failure to act with reasonable diligence and promptness.
With respect to Reardon's argument that a suspension is an unduly punitive sanction, ODC concedes there are mitigating factors in this case that weigh "in favor of a reduction of a more punitive period of suspension in excess of six months." Nonetheless, given Reardon's disciplinary record and the nature of his office practices, which led to these most recent serious violations, the ODC contends that a six month suspension is not unduly punitive. Moreover, the ODC asserts in its supplemental response that the public reprimand and probation Reardon received in 1997 for failing to pay taxes was "too lenient a sanction." The ODC concludes that, "[a]lthough the two instant cases do not, in isolation, appear to require suspension, the *575 1997 permissive sanction tips the balance in favor of a more severe sanction in the pending cases."

Standard and Scope of Review Findings of Violations Supported by the Record
Our scope of review with regard to the Board's factual findings is to determine whether the record contains substantial evidence to support those findings.[6] We review de novo the Board's conclusions of law. We have made a careful and independent review of both the factual findings and the conclusions of law that are set forth in the Board's Final Report. We are satisfied that the record before us supports the Board's finding of two violations by Reardon of Rule 1.3 in this case.

Appropriate Sanction
The remaining issue is the determination of an appropriate sanction. This Court has the inherent and exclusive authority for disciplining members of the Delaware Bar.[7] Therefore, while the Board's recommendations regarding sanctions may be helpful, the Court is not bound by those recommendations and may impose any sanction it deems appropriate.[8] The Court has wide latitude in determining the form of discipline to be imposed, and we are guided in part by our relevant precedents.
Our precedents reflect that, in determining an appropriate sanction for lawyer misconduct, the Court has cited favorably to the theoretical framework set forth in the ABA Standards for Imposing Lawyer Sanctions (ABA Standards).[9]
The approach of the ABA Standards is to require the Court to make an initial determination of an appropriate sanction by answering the following three questions:
(1) What ethical duty did the lawyer violate? (A duty to a client, the public, the legal system, or the profession?)
(2) What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?)
(3) What was the extent of the actual or potential injury caused by the lawyer's misconduct? (Was there a serious or potentially serious injury?)[10]
After making an initial determination of the appropriate sanction, the Court will consider any aggravating or mitigating factors. The effect of aggravating or mitigating circumstances may lead the Court to impose a sanction different from the Court's initial determination. Consideration of the circumstances of the individual lawyer helps ensure that the sanctions selected will best serve the basic goals of lawyer discipline.
We have held that the basic goals of lawyer discipline are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct.[11] This Court has held consistently that the purpose of lawyer discipline is not to punish lawyers.[12]

*576 Application of the ABA Standards Initial Sanction Determination

In this case, the Board found, and we agree, that Reardon's misconduct in both instances was a violation of his duty to represent his respective clients with reasonable diligence under Rule 1.3. It is undisputed that Reardon's misconduct was negligent. There is no assertion that Reardon's misconduct was knowing or intentional. Moreover, although Reardon disputes that his misconduct was the actual cause of his clients' injuries, Reardon and ODC both agree that the injury suffered by Reardon's clients was not substantial given the factual context of the respective cases.
The relevant ABA Standard regarding lack of diligence, Standard 4.4, provides:
4.4 Lack of Diligence

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a failure to act with reasonable diligence and promptness in representing a client:
. . .
4.42 Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.
4.43 Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.
The Board concluded, albeit after consideration of aggravating and mitigating factors, that a six month suspension was warranted under Standard 4.42 because Reardon had engaged "in a pattern of neglect and cause[d] injury or potential injury" to his clients. We disagree. As an initial matter and without considering aggravating or mitigating factors, Reardon's misconduct in the Atlantic Roofing and Pierce and Miller cases did not constitute "a pattern of neglect" causing "injury or potential injury to a client."[13] Although we specifically reject Reardon's contention that his misconduct was not the cause of the injury to his client in the Atlantic Roofing case,[14] we do not agree with the Board's conclusion that the misconduct involved in these two cases establishes a "pattern" of neglect.
The term "pattern" is not defined in the ABA Standards. Nor has this Court had occasion to define the term "pattern" with precision in the context of a lawyer disciplinary proceeding.[15] Our prior decisions finding a pattern of lawyer misconduct involved identifiably similar instances of repeated misconduct over a period *577 of time or involved multiple acts of intentional or knowing misconduct.[16] Although we believe that two or more acts could, under different circumstances than those presented here, constitute a "pattern" of misconduct, the number of acts of misconduct, standing alone, cannot establish a pattern. A pattern may be discerned from two or more recognizably consistent acts that serve as a predictor of future misconduct. Whether the acts are recognizably consistent may depend upon a combination of factors including, among other things, the temporal proximity of the acts, the number of acts of misconduct, the number of clients or cases involved, the similarity of the duties violated and the resulting injuries, and the lawyer's state of mind.
In this case, the two acts of misconduct occurred closely in time and involved violations of Reardon's duty of diligence to two different clients. The actual acts of misconduct and the resulting injuries, however, are not similar. In the Atlantic Roofing case, Reardon failed to ensure that the agreement he reached on behalf of his client was reflected accurately in the stipulation he signed. This ultimately resulted in financial damage to his client. In the Pierce and Miller case, Reardon retained documents and failed to make it clear that he declined to represent them. Pierce and Miller did not suffer any damage from this misconduct, however, because they did not have a defense to the lawsuit. The Board found Reardon to be negligent in both cases. Negligence is the least culpable mental state and, thus, not as strong a predictor of future misconduct as prior acts of intentional or knowing misconduct. Considering the totality of the circumstances presented in both cases, we do not agree with the Board's conclusion that the two cases, standing alone, represent a "pattern of neglect."
Accordingly, as an initial matter, we find Standard 4.43 to be more applicable than Standard 4.42. Standard 4.43 recommends, in the absence of aggravating or mitigating factors, the imposition of a public reprimand when a lawyer is negligent and fails to act with reasonable diligence which causes injury or potential injury to a client. Public reprimand is a way of conveying disapproval of lawyer misconduct that does not warrant incapacitating sanctions, such as suspension or disbarment.[17]
Furthermore, we find probation, in addition to a public reprimand, to be warranted in this case. Probation, as a rehabilitative sanction, is justified when a lawyer's right to practice law needs to be monitored or limited rather than revoked or suspended and when it appears that the conduct at issue is capable of being corrected.[18] And, if it is not corrected, suspension or revocation, as the case may be, should follow.

*578 ABA Standards Aggravating Factors

Having determined as an initial matter that the circumstances of the present case warrant a public reprimand and the imposition of a period of probation, we now consider the existence of any aggravating or mitigating factors that might compel us to impose a greater or lesser sanction. ABA Standard 9.22 sets forth the following aggravating factors:
9.22 Factors which may be considered in aggravation. Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
(k) illegal conduct, including that involving the use of controlled substances.
In Reardon's case, the Board found the following to be aggravating factors: (i) Reardon's substantial experience in the practice of law; (ii) Reardon's commission of multiple offenses; (iii) Reardon's pattern of misconduct; (iv) the lack of any evidence of attempted restitution for injury caused to his clients; and (v) Reardon's prior disciplinary record. With the exception of the "pattern of misconduct" factor, we find record support for the Board's conclusions that each of these factors was an aggravating circumstance.[19]
As noted, we do not find that these two acts of misconduct viewed in isolation are recognizably consistent acts sufficient to constitute the separate aggravating factor of "a pattern of misconduct" beyond "the commission of multiple offenses" factor already found by the Board. Moreover, even viewing these two acts in the broader context of Reardon's entire disciplinary history, we still cannot conclude that Reardon has engaged in a discernible pattern of misconduct during the course of his 35 year legal career.

Reardon's Prior Disciplinary Record
In 1972, Reardon received a private admonition.[20] In 1977, Reardon was suspended for one year for misconduct in several different matters involving mishandling client funds, failing to pursue client cases with diligence and competence, and failing to file personal income tax returns.[21] Reardon completed his period of suspension without incident and returned to the practice of law without restriction. Twenty years later, in 1997, Reardon was publicly reprimanded and given a two year probation for failing to file and pay personal income taxes and for filing a false registration with this Court in 1995 concerning tax issues.[22] The 1997 probation was imposed after the underlying misconduct occurred *579 in the Atlantic Roofing and Pierce and Miller cases. Reardon successfully completed his two year probationary period and has since been engaged in the practice of law without apparent incident.
We are deeply troubled that a lawyer with Reardon's disciplinary history would not exercise more care in dealing with client (or potential client) matters. We cannot conclude, however, that Reardon's 1972 and 1977 sanctions can fairly be linked to the present case in order to discern a pattern of misconduct, given the passage of so many years. Nor do we find Reardon's 1997 tax problems, which occurred prior to the misconduct in the pending cases and have since been resolved, to be recognizably consistent with the pending charges in order to establish a pattern of misconduct.
ODC asserts that the sanction Reardon received in 1997 appears lenient in retrospect.[23] But we cannot, as the ODC suggests, allow the failure to impose a harsher sanction in 1997 to form the sole basis for increasing the sanction in the case before us now, even if we assume arguendo that the 1997 sanction was lenient (which we do not decide). Such a result would not advance any of the objectives of the lawyer disciplinary system and, in fact, would serve no purpose except to punish Reardon for conduct that is not even at issue in this case. Even the ODC concedes that, without considering the arguable leniency of the 1997 sanction, the present case does not "appear to require suspension." After considering the mitigating factors involved in this case, we agree with that conclusion.

Mitigating Factors
Standard 9.32 provides that the following are factors to be considered in mitigation.
9.32 Factors which may be considered in mitigation. Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
(2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse;
(m) remoteness of prior offenses.
In Reardon's case, the Board found the following to be mitigating factors: (i) lack of dishonesty or selfish motive; (ii) cooperation with the disciplinary process; (iii) character and reputation; and (iv) remorse. The panel also considered it relevant that the conduct alleged in the two *580 present cases actually pre-dated the 1997 disciplinary proceedings that resulted in Reardon's two year probation.
Based upon our review of the record, we find the Board's conclusions as to the mitigating factors to be supported by clear and convincing evidence. After considering the aggravating and mitigating factors in light of our initial determination, we conclude that the aggravating and mitigating factors offset each other and that neither weigh in favor of increasing or decreasing the sanction we initially determined to be appropriate.
Although Reardon has substantial experience in the practice of law, as well as a substantial disciplinary record, we find these aggravating circumstances to be offset by his lack of dishonesty in the present cases, his cooperation with the disciplinary process, his genuine remorse, and his acceptance of responsibility for his misconduct. We note that he has willingly undertaken positive initiatives to ensure these types of negligent acts will not occur in the future. Furthermore, although his prior disciplinary record is significant, Reardon has had a long career of public service. He has had a good reputation that includes offering affordable legal services to an under-represented segment of the population that would not otherwise be able to retain the services of a lawyer.
Accordingly, we find the imposition of a public reprimand coupled with a two year public probation, subject to certain strict conditions, and permanent limitations on Reardon's continued practice of law to be the sanction most consistent with the ABA Standards. Such a sanction also serves the critical goal of protecting the public by ensuring that Reardon be restricted permanently from accepting client matters outside his sphere of expertise and by ensuring that Reardon's professional conduct for the next two years will be subject to heightened scrutiny.

Proportionality of Sanction Compared to Other Cases
In addition to ensuring that the sanction we impose serves the goal of protecting the public, any disciplinary sanction imposed by the Court must also serve the goal of deterring other lawyers from similar misconduct. In order to have an appropriate, and not unduly chilling, deterrent effect, lawyer discipline should be predictable, fair, and consistent with our prior decisions imposing lawyer discipline.
We have reviewed this case in light of both our prior decisions imposing suspension and in light of our prior decisions imposing a public reprimand and probation. We find Reardon's case distinguishable from our prior suspension cases for many reasons. First, Reardon was not on disciplinary probation at the time of the misconduct.[24] Second, Reardon's conduct in this case, although negligent, did not involve intentional or knowing misconduct,[25] or even gross negligence.[26] Nor did his misconduct cause serious or potentially serious injury.[27] Unlike other cases where suspension was held appropriate,[28] Reardon has shown remorse and has accepted full responsibility for his misconduct and has implemented permanent changes to his law practice in order to reduce the risks of any future negligent misconduct. These permanent, substantive restrictions on Reardon's practice will protect the public by greatly reducing the risk of harm *581 that might result from any future misconduct.
In considering our precedents, we find Reardon's case to be analogous to the circumstances presented in In re Solomon.[29] In that case, Solomon admitted that in a period of four years she had violated seven different disciplinary rules in eight separate client matters. Although Solomon did not have a prior disciplinary record, the Court found her numerous rule violations established a pattern of misconduct that involved failure properly to maintain her accounts and records, failing to protect her clients' interests through appropriate communication and diligent representation, failing to comply with her obligations to the judicial system, and otherwise failing to properly manage her law practice.
Notwithstanding these findings, the Court concluded that Solomon's lack of dishonest motive, her recent cooperation with the disciplinary process, and her willingness to alter drastically the manner in which her law practice is managed, warranted a public reprimand along with certain permanent limitations on Solomon's future practice, and a four year public probation subject to certain terms, conditions, and limitations. Given the totality of the circumstances in Reardon's case, we find that a sanction similar to that imposed in In re Solomon to be appropriate.
Accordingly, it is ordered that the sanction to be imposed in the Reardon matter is as follows:
(1) Reardon is hereby publicly reprimanded for his conduct in this case;
(2) Reardon is hereby placed on disciplinary probation for two years commencing September 15, 2000, and ending September 14, 2002. During his probationary period, he shall be subject to the following conditions:
a. Practice Monitor. A Practice Monitor who is an experienced lawyer resident in Sussex County shall be designated by the Office of Disciplinary Counsel and approved by the Court no later than October 1, 2000. Reardon shall consult with the Practice Monitor within ten days of the start of his probationary period concerning Reardon's office practices and procedures. Reardon shall implement any suggestions of the Practice Monitor to improve his office practices and procedures and shall permit the Practice Monitor to supervise such implementation through periodic checks with Reardon and his office staff;
b. Reports. Reardon shall file quarterly reports with ODC certifying that he has consulted with the Practice Monitor concerning the maintenance of sound practices and procedures. Each report shall contain the Practice Monitor's certification that Reardon has complied with this term of his probation.
c. Compliance. Reardon shall cooperate fully with ODC in its effort to monitor compliance with this probation and promptly respond to ODC's correspondence by given due dates.
d. Violation. If ODC concludes after giving Reardon an opportunity to respond that he has violated the terms of his probation, ODC, may file a petition directly with this Court requesting that he be suspended from the practice of law.
e. Disclosure. Reardon must provide written notice to all current and prospective clients that he is on disciplinary probation.
(3) Reardon shall be subject to the following permanent conditions and restrictions on his law practice:
a. He shall not accept representation in any civil matters, except court-appointed guardian cases.
b. He shall not accept representation in any felony criminal cases.
*582 This opinion and order shall be disseminated by the Office of Disciplinary Counsel in accordance with Rule 14 of the Rules of Disciplinary Procedure.
NOTES
[1] These rules were amended by Court order dated March 9, 2000 and are now referred to as the Delaware Lawyers' Rules of Disciplinary Procedure.
[2] The ODC stipulated, based upon its independent investigation, that Reardon's understanding of his agreement with Wolhar was the more accurate understanding. Wolhar subsequently was suspended from the practice of law for three years for numerous reasons, including acts of dishonesty, unrelated to the present matter. In re Wolhar, Del. Supr., 705 A.2d 245 (1997).
[3] We take this opportunity to express our concern about members of the Delaware judiciary participating as character witnesses in lawyer disciplinary proceedings. Canon 2B of the Delaware Judges' Code of Judicial Conduct provides, "A judge should not testify voluntarily as a character witness." See DELAWARE JUDGES' CODE OF JUDICIAL CONDUCT Canon 2B. Compare with NEW JERSEY CODE OF JUDICIAL CONDUCT Canon 2B (2000) and Va.Supr.Ct.R. pt. 6, § III, CANONS OF JUDICIAL CONDUCT Canon 2B (1999) (both New Jersey and Virginia omit the word "voluntarily" from Canon 2B so that a judge cannot testify as a character witness under any circumstances). Unless a judge's testimony is relevant to the underlying facts of the disciplinary charges, the judge should not willingly agree to be subpoenaed to testify as a witness. Given that members of the Board include lawyers who may have to appear in other proceedings before the judge-witness, the testimony of the judge-witness may be accorded undue deference simply because of the witness' position as a judge. See DELAWARE JUDGES' CODE OF JUDICIAL CONDUCT Canon 2B Comment ("The testimony of a judge as a character witness injects the prestige of the judicial office into the proceeding in which the judge testifies and may be misunderstood to be an official testimonial."). We approve the conclusion of the Supreme Court of South Carolina in In re Thomason, 279 S.C. 197, 304 S.E.2d 821, 823 (1983) ("We deem it improper for a judge to testify in person or by deposition or affidavit as a character witness in a disciplinary proceeding; thus, we do not consider the judges' [sic] testimony. The Board shall not hereafter issue subpoenas for judges as character witnesses."). See also Leslie A. Abramson, Canon 2 of the Code of Judicial Conduct, 79 MARQ.L.REV. 949, 978 n. 105 (1996) (collecting cases).
[4] Reardon was admitted to the Delaware Bar in 1965.
[5] Del.Supr., 745 A.2d 874 (1999).
[6] In re Shearin, Del.Supr., 721 A.2d 157, 165 (1998).
[7] In re Green, Del.Supr., 464 A.2d 881, 885 (1983).
[8] In re Mekler, Del.Supr., 669 A.2d 655, 668 (1995).
[9] In re Benge, Del.Supr., 754 A.2d 871, 879 (2000); In re Figliola, Del.Supr., 652 A.2d 1071, 1076 (1995).
[10] ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS. Theoretical Framework (1986 and as amended 1992); In re Shearin, 721 A.2d at 166.
[11] In re Figliola, 652 A.2d at 1076.
[12] In re Benge, 754 A.2d at 879.
[13] ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS, Standard 4.42 (1986 and as amended 1992).
[14] Given our conclusion that Reardon's misconduct was the actual cause of the financial injury suffered by Atlantic Roofing, we do not find it necessary to reach the issue of whether Pierce and Miller, who did not suffer any actual or potential monetary loss due to Reardon's misconduct, may have suffered some other "psychic" harm, as the ODC appears to assert.
[15] Compare Stroik v. State, Del.Supr., 671 A.2d 1335, 1342 (1996). In Stroik, the Court noted the difficulty in attempting to narrowly define the term "pattern of racketeering" because of "the inability of one definition adequately to address all possible situations." Id. at 1342. The Court cited favorably to the United States Supreme Court's definition of a "pattern of racketeering," which requires proof that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Id. (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)).
[16] See, e.g., In re Benge, 754 A.2d at 880 (lawyer with prior disciplinary record, including a private admonition with a private probation and a public reprimand with a public probation, who currently was on probation for neglect of client cases was ordered suspended for one year for most recent violations, which viewed in light of prior record, reflected "a persistent pattern of client neglect"); In re Sullivan, Del.Supr., 727 A.2d 832 (1999) (lawyer suspended for eighteen months for his pattern of misconduct in eleven client matters, which included neglect and intentional misrepresentations); In re Mekler, Del.Supr., 669 A.2d 655, 668 (1995) (lawyer with substantial prior disciplinary record, including eight prior sanctions, was suspended for one year for misconduct in several matters constituting "gross negligence" that went beyond mere "sloppiness and unprofessional practices"); In re Carmine, Del.Supr., 559 A.2d 248 (1989) (lawyer suspended for two years for multiple acts of misconduct, which included intentional misrepresentations, in four different client matters).
[17] Leslie C. Levin, The Emperor's Clothes and Other Tales About the Standards for Imposing Lawyer Discipline Sanctions, 48 AM.U.L.REV. 1, 22 (1998).
[18] Id. At 24.
[19] Because Pierce and Miller did not suffer any financial injury as a result of Reardon's misconduct, we do not find the lack of restitution to be an aggravating factor in that case. Nonetheless, we uphold the Board's conclusion that lack of attempted restitution was an aggravating factor in the Atlantic Roofing case.
[20] Given the age of the 1972 private sanction, ODC records no longer exist regarding the underlying nature of the misconduct in that case.
[21] In re Reardon, Del.Supr., 369 A.2d 666 (1977).
[22] In re Reardon, Del.Supr., No. 100, 1997 (Mar. 20, 1997) (ORDER).
[23] Reardon's 1997 reprimand and probation were the result of a conditional admission and agreement entered into by Reardon and the predecessor to the current Disciplinary Counsel involved in this case.
[24] See In re Benge, Del.Supr., 754 A.2d 871 (2000).
[25] See In re Tos, Del.Supr., 576 A.2d 607 (1990); In re Carmine, Del.Supr., 559 A.2d 248 (1989).
[26] See In re Mekler, Del.Supr., 669 A.2d 655 (1995).
[27] See In re Faraone, Del.Supr., 722 A.2d 1 (1998).
[28] See In re Guy, Del.Supr., 576 A.2d 875, 2000 WL 898311 (2000); In re Shearin, Del. Supr., 721 A.2d 157 (1998).
[29] Del.Supr., 745 A.2d 874 (1999).