# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

WILLIAM F. BILSKI, D.O.,           )
        Appellant,                )       C. A. No.:   N13A-10-005 VLM
                                  )
        v.                        )
                                  )
THE BOARD OF MEDICAL               )
LICENSURE AND DISCIPLINE           )
OF THE STATE OF DELAWARE,          )
        Appellee.                 )

## OPINION

Submitted: March 26, 2014
Decided: June 30, 2014

*Upon Consideration of Appellant's Appeal of the Decision and Final Public Order of the Board of Medical Licensure and Discipline of the State of Delaware,*
**AFFIRMED.**

Victor F. Battaglia, Esquire, Biggs and Battaglia, 921 N. Orange Street, Wilmington, DE 19801, Attorney for Appellant.

Patricia Davis Oliva and Jennifer L. Singh, Deputy Attorneys General, Department of Justice, 102 W. Water Street, 3rd Floor, Dover, DE 19904, Attorneys for Appellee.

**MEDINILLA, J.**

## INTRODUCTION

A final order of the Board of Medical Licensure and Discipline of the State of Delaware ("the Board") found that Appellant, physician William Bilski D.O., ("Dr. Bilski") acted unprofessionally and violated the Medical Practice Act, pursuant to 24 *Del. C.* § 1731(b)(11). This is Dr. Bilski's appeal pursuant to 24 *Del. C.* § 1736, 29 *Del. C.* § 10142, and Superior Court Civil Rule 72. This Court finds that the Board's order is supported by substantial evidence and free from legal error. Therefore, the Board's order is **AFFIRMED.**

## FACTUAL AND PROCEDURAL HISTORY

On May 23, 2011, the Division of Professional Regulation ("Division") received a letter from a concerned parent regarding Dr. Bilski's controlled substance prescribing practices. The Division assigned an investigator, Ralph Kemmerlin ("Kemmerlin"), who subpoenaed records and interviewed Dr. Bilski. During the course of the investigation, Dr. Bilksi informed Kemmerlin of a second patient whom Dr. Bilksi suspected had stolen a prescription pad. This prompted Kemmerlin to open a second investigative complaint, wherein he subpoenaed additional records and re-interviewed Dr. Bilksi regarding the second patient.

Following the investigation, on February 4, 2013, the Delaware Department of Justice ("DOJ") filed a disciplinary complaint with the Board alleging that Dr. Bilski was guilty of unprofessional conduct. The DOJ specifically alleged that

1

beginning in 2009, while prescribing controlled substances to his patients, Dr. Bilski failed to document the nature and intensity of his patient's pain, current and past pain treatments, underlying or coexisting diseases or conditions, the effects of his patient's pain on their physical and psychological functions, objectives to measure success of controlled substance use over time, and discussions with patients of the risks and benefits of using controlled substances.[1]

The DOJ complaint asserted, in part, that Dr. Bilski's conduct violated the Federation of State Medical Boards' Model Policy for the Use of Controlled Substances ("Model Policy"), Board Regulation 31,[2] and alleged that his misconduct constituted a pattern of negligence in the practice of medicine in violation of 24 *Del. C.* § 1731(b)(11). On June 3, and 4, 2013, a Division of Professional Regulation Hearing Officer ("Hearing Officer") conducted an evidentiary hearing pursuant to 29 *Del. C.* § 8735(v)(1)d.

The Hearing Officer heard evidence of deficient medical record keeping practices related to two patients over the course of two years - collectively resulting in the sum of more than sixty (60) deficient documentation practices.

---

[1] Complaint at ¶7-10, 14-15, 22.
[2] Board Regulation 31 was originally enacted as Board Regulation 30. *See* Complaint at ¶26e.1.

Specifically, from 2009 to 2011, as to the first patient, Dr. Bilski issued monthly prescriptions including Oxycontin, Lortab, and Soma, for the treatment of pain.[3] Dr. Bilski consistently failed to document physical examinations,[4] any comprehensive pain assessment,[5] or to indicate any treatment plan outline.[6] His medical records lacked any documentation evincing any doctor/patient discussions of the risks associated with long-term use, misuse, or drug abuse, and of the pain management medications as prescribed.[7] His medical records were unclear as to when prescriptions were issued, when refills were ordered,[8] and at times failed to identify which medication was being refilled. Dr. Bilski claimed that he was trying to wean his patient off the medications, but nothing in the records documents such a plan.[9]

The medical documentation of Dr. Bilski's second patient is plagued with similar deficiencies. Dr. Bilski prescribed Oxycodone and other controlled substances to manage his patient's pain from October 2009 to June 2011.[10] During that time, the evidence presented showed that Dr. Bilski did not document any

---

[3] Appellee's Answering Br. Appendix at 26 and 42.
[4] Appellee's Answering Br. Appendix at 19-21.
[5] Appellee's Answering Br. Appendix at 21-22.
[6] Appellee's Answering Br. Appendix at 24-25.
[7] Appellee's Answering Br. Appendix at 26-27 (Dr. Bilski claimed he did discuss the risks and benefits, but Kemmerlin did not find any "written evidence").
[8] Appellee's Answering Br. Appendix at 31-32.
[9] Appellee's Answering Br. Appendix at 56-57.
[10] Appellee's Answering Br. Appendix at 37-38.

comprehensive pain evaluation,[11] offer alternative treatment options,[12] or make an appropriate referral to a pain management specialist.[13] He failed to screen for risk of drug abuse,[14] or speak to his patient regarding the risks associated with prolonged use of controlled substances.[15] This patient's records, just as with the first patient's, are ambiguous as to when medicines were prescribed and refilled.[16] In order to justify asking for an early refill, on several occasions, one patient merely had to tell Dr. Bilski that prescriptions had only been partially refilled.[17] The testimony included that Dr. Bilski suspected one patient might have been selling pills or forging prescriptions.[18] Regrettably, the records do not contain any indication that Dr. Bilski ever did anything about it, including checking with the pharmacy filling the prescription.[19]

Dr. Bilski did not dispute the lack of documentation regarding his patients' treatment plans. However, he argued for dismissal of the charges based on the following: (1) Because Board Regulation 31 was not adopted until 2012, and after the relevant period of conduct, he was not in violation of said regulation, (2) the Model Policy could not legally set mandatory requirements, and (3) the complaint

---

[11] Appellee's Answering Br. Appendix at 38.
[12] Appellee's Answering Br. Appendix at 36.
[13] Appellee's Answering Br. Appendix at 36-37
[14] Appellee's Answering Br. Appendix at 37.
[15] Appellee's Answering Br. Appendix at 38.
[16] *See* Appellee's Answering Br. Appendix at 67-97.
[17] Appellee's Answering Br. Appendix at 89-93.
[18] Appellee's Answering Br. Appendix at 86.
[19] Appellee's Answering Br. Appendix at 89-93.

failed to give adequate notice of the charges. [20] These arguments were presented and considered by the Hearing Officer as well as the Board, and essentially mirror those put forth in this appeal.

Following approximately eleven hours of hearing, wherein Dr. Bilski was represented by counsel, the Hearing Officer found a set of facts and made recommendations to the Board. Specifically, the Hearing Officer issued a ninety page recommendation on July 10, 2013 in which he recommended the Board find Dr. Bilski's conduct rose to the level of misconduct and violated 24 *Del. C.* § 1731(b)(11):

> Misconduct, including but not limited to sexual
> misconduct, incompetence, or gross negligence or pattern
> of negligence in the practice of medicine or other
> profession or occupation regulated under this chapter.

The Hearing Officer recommended the Board discipline Dr. Bilski by placing his medical license on probation for one year and that he be permitted to petition to have his probationary period terminated after six months if he could demonstrate that he had followed Board rules regarding pain management practices for prescribing controlled substances, completed continuing education

---

[20] By way of background, the Court notes that a large portion of the complaint, hearing and Hearing Officer's recommendation focused on Dr. Bilski's violations of the Model Policy. The Model Policy, adopted by the Board in 2009, describes conduct related to the distribution of pain management medication and the documentation of such. In 2012, the Model Policy was enacted as a formal Board regulation - Regulation 31. The evidence unambiguously shows, and Dr. Bilski does not dispute, that his documentation practices did not conform to the requirements of the Model Policy.

courses, and transferred care of his pain management patients to another physician during his probationary period.

Following the Hearing Officer's recommendation, the parties were provided with twenty days to submit to the Board for their consideration written argument, objections or exceptions to the Hearing Officer's findings of facts and recommended conclusions of law and discipline. Specifically, Dr. Bilski appeared through his counsel at a September 10, 2013 meeting to present oral arguments before the Board. The Board considered Dr. Bilski's oral and written arguments, and in its January 7, 2014 Public Order, the Board adopted the facts found by the Hearing Officer, but

> [r]eject[ed] the finding that a violation of [the Model Policy] equates to *per se* unprofessional conduct in violation of 24 *Del. C.* 1731(b). However, because the findings of fact indicate that documentation errors occurred over a period of time, the Board accept[ed] the finding that Dr. Bilski violated *24 Del. C.* 1731(b)(11) in that his conduct amounted to a pattern of negligence.

The Board adopted the Hearing Officer's recommended penalty of the imposition of a one-year probationary period subject to a six month review, but modified the penalty from the original recommendation that Dr. Bilski transfer his pain management patients and instead ordered him to submit to a medical records audit and complete additional continuing education courses in record keeping.

6

Dr. Bilski filed a Notice of Appeal with this Court on October 7, 2013 and an Opening Brief on January 15, 2014. The Board filed an Answering Brief on February 5, 2014. Dr. Bilski filed a Reply on February 21, 2014.

## STANDARD OF REVIEW

On appeal, this Court determines whether the Board's decision is supported by substantial evidence and free from legal error.[21] Substantial evidence is such relevant evidence that a reasonable mind would accept as adequate to support a conclusion.[22] This Court does not act as the trier of fact, nor does it have authority to weigh the evidence, decide issues of credibility, or make factual conclusions.[23] In reviewing the record for substantial evidence, the Court must consider the record in the light most favorable to the party prevailing below.[24] The Court's review of conclusions of law is *de novo*.[25] Absent an error of law, the Board's decision will not be disturbed where there is substantial evidence to support its conclusions.[26]

---

[21] *General Motors v. McNemar,* 202 A.2d 803, 805 (Del.Super.1964); *General Motors Corp. v. Freeman,* 164 A.2d 686, 688 (Del.Super.1960).
[22] *Oceanport Ind. v. Wilmington Stevedores,* 636 A.2d 892, 899 (Del.Super.1994).
[23] *Johnson v. Chrysler Corp.,* 213 A.2d 64, 66 (Del.Super.1965).
[24] *Benson v. Phoenix Steele,* 1992 WL 354033, at *2 (Del Super. Nov. 6, 1992).
[25] *Reese v. Home Budget Center,* 619 A.2d 907 (Del.Super.1992).
[26] *Dellachiesa v. General Motors Corp.,* 140 A.2d 137 (Del.Super.1958).

**DISCUSSION**

Dr. Bilski puts forth five arguments in support of reversal: (I) the Board committed legal error by basing its determination upon its own expertise and not on evidence in the record, (II) the Board's decision was not supported by substantial evidence because no expert testimony was provided at the evidentiary hearing,[27] (III) the Board's finding that Dr. Bilski's behavior amounted to a "pattern" of neglect was not supported by substantial evidence, (IV) the DOJ did not provide constitutionally sufficient notice of the allegations to Dr. Bilski, and (V) the Board committed legal error in basing its decision on violations of the 2009 Model Policy. This Court reviews each argument separately and finds them to be without merit.

**I.** ***The Board Did Not Commit Legal Error in Finding that Expert Testimony was Not Required Pursuant to* 18 *Del. C.* § 6853(e)**

Dr. Bilski cites to the statutory authority in 18 *Del. C.* § 6853(e) which establishes that "[n]o liability shall be based upon asserted negligence unless expert medical testimony is presented." Specifically, he argues that the Board committed legal error by implicitly ruling that no expert testimony was necessary to establish standard of care for purposes of their review, and suggests that this is in violation of 18 *Del. C.* § 6853(e).

---

[27] Dr. Bilski's first two arguments are, conceptually, two sides of the same coin. However, since they are briefed as independent bases for appeal, this Court has addressed them as such.

Dr. Bilski seeks to transpose the requirements of "medical negligence" to the Board's procedures in interpreting its own statute for disciplinary proceedings. 18 *Del. C.* § 6853(e) applies to medical negligence as defined in 18 *Del. C.* § 6801(7):

> "Medical negligence" means *any tort or breach of contract* based on health care or professional services rendered, or which should have been rendered, by a health care provider *to a patient*. The standard of skill and care required of every health care provider in rendering professional services or health care to a patient shall be that degree of skill and care ordinarily employed in the same or similar field of medicine as defendant, and the use of reasonable care and diligence.[28]

The Court has, in the past, made clear that the technical requirements of medical negligence claims are not identical to those of administrative board claims.[29] The elements of negligence considered by the Board did not involve claims against tortious or contractual disputes that sought compensable damages against an injured patient. The parties here did not include patients seeking relief from Dr. Bilski on theories of medical negligence. This Court agrees that had this been a medical negligence case, expert opinion would have had to be offered to establish that the defendant breached the applicable standard of care and that the

---

[28] 18 Del. C. § 6801(7) (emphasis added).
[29] *See Jain v. Del. Vd. Of Nursing*, 2013 WL 3389287 (Del. Super. Feb. 13, 2013).

9

breach was a proximate cause of the injury or injuries claimed.[30]  However, this is not a medical negligence case.

Rather, the Board considered claims filed by the DOJ against Dr. Bilski at an administrative level that are distinguishable from the legal processes of a typical medical negligence case.  While the Board may rely on expert testimony for matters related to the various licensing issues it is asked to review, Dr. Bilski provides no authority for the proposition that all Board decisions require expert testimony in order to establish standard of care.[31]

Similarly, Dr. Bilski claims that the Board impermissibly "use[d] its own institutional expertise to create evidence."[32]  Dr. Bilski suggests that because there was no expert testimony at the evidentiary hearing, the Board must have necessarily "created" the evidence through its own expertise.  This Court disagrees with Dr. Bilski's contention.  The inference that the Board created such evidence is unfounded.  The Board considered a robust record to accept the findings of the

---

[30]*See e.g. Dambro v. Meyer*, 974 A.2d 121, 126 (Del. 2009); 18 *Del. C.* § 6853(e).

[31] Dr. Bilski has provided the Court with case law emphasizing the expert testimony requirement in civil tort contexts.  *See e.g. Stayton v. Clariant Corp.*, 2014 WL 28726 (Del. Jan. 2, 2014) ("when professional negligence is at issue, evidence of the standard of care must come from expert testimony.").  To be sure, this Court has also reviewed cases provided by Dr. Bilski in which the Court relied on expert testimony to establish standard of care in reviewing appeals from the Board.  *See e.g. Turbitt v. Blue Hen Lines, Inc.*, 711 A.2d 1214 (Del. 1998) ("the [Industrial Accident] Board, when presented with uncontroverted expert medical opinion, may not use its administrative expertise as a basis for rejecting competent medical evidence.").

[32] Opening Br. at 11.

Hearing Officer in order to support their decision – Dr. Bilski's contention that they had to create evidence is simply not supported by the record.

For the reasons above stated, the Court does not interchange or impose the statutory requirements of the medical negligence statute to reviews considered by the Board and rejects Dr. Bilski's argument that expert testimony at an administrative level is mandated pursuant to 18 *Del. C.* § 6853(e).

**II.**      ***There Was Substantial Evidence to Support the Board's Decision***

In reviewing the factual determinations of the Board, this Court's analysis is guided by 29 *Del. C.* § 10142(d):

> The Court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted.[33]

Dr. Bilski renews his argument that there was insufficient evidence because there was no expert testimony in this case.[34] This argument has already been addressed and rejected by this Court. However, this Court finds that the Board rightfully accepted the numerous factual findings of Dr. Bilski's deficient documentation practices. Beyond the highlighted examples of Dr. Bilski's careless record keeping practices, in one telling example, Dr. Bilski admitted while

---

[33] 29 *Del. C.* 10142(d).
[34] Opening Br. at 13 (no expert testified so there is no evidence, let alone substantial evidence of negligence.").

11

testifying from his own records that he was unsure whether he wrote five separate prescriptions for a patient during a single office visit in January 2009, or during the course of multiple undocumented office visits from January to February.[35] In finding that Dr. Bilski's conduct violated 24 *Del. C.* 1731(b)(11), the Board was well within its capacity to evaluate the evidence.[36]

### III.    *There was Substantial Evidence to Support the Board's Finding of a "Pattern" of Negligence*

Dr. Bilski argues that the there was not substantial evidence to support the Board's finding that Dr. Bilski's conduct amounted to a "pattern of negligence in the practice of medicine" in violation of 24 *Del. C.* § 1731(11). In support, Dr. Bilski cites to the Supreme Court of Delaware's analysis of an alleged "pattern" of negligence in *In re Reardon* to suggest there was not enough in this record to find a "pattern" of negligence.[37]

The *In re Reardon* Court explained:

> A pattern may be discerned from two or more recognizably consistent acts that serve as a predictor of future misconduct. Whether the acts are recognizably consistent may depend upon a combination of factors including, among other things, the temporal proximity of the acts, the number of acts of misconduct, the number of

---

[35] Appellee's Answering Br. Appendix at 42.

[36] *See Turbitt v. Blue Hen Lines, Inc.*, 711 A.2d 1214, 2126 (1998) ("'institutional experience' or administrative expertise the board possesses may be used as a tool for evaluating evidence but not as a source for creating evidence.").

[37] *See* ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS, Standard 4.42 (1986 and as amended 1992).

> clients or cases involved, the similarity of the duties violated and the resulting injuries, and the lawyer's state of mind.[38]

Dr. Bilski argues that "[a]t best the evidence in the record is that [he] did not abide by the Model Policy with respect to two patients over a narrow period of time . . . [e]ven if failing the policy is wrong, it is a single wrong, not a pattern."[39] The Court does not agree with Dr. Bilski that his actions constituted a "single wrong."

Dr. Bilski, a professional caregiver, was given licensing privileges in Delaware to medically care for patients in family medicine with a small percentage of his practice dedicated to patients with chronic pain issues. The Board considered facts which demonstrated a pattern of carelessness and disregard in Dr. Bilski's record-keeping. Dr. Bilski failed to document physical examinations or perform comprehensive pain assessments. He did not document his treatment plans or what, if anything, he communicated to his patients regarding the risks associated with long-term use of the pain management medications prescribed. Multiple entries in his records were unclear as to when prescriptions were issued or refills ordered and, sometimes failed to identify which medications were refilled. He failed to show comprehensive pain evaluations or alternative treatment options. Even where there was suspicion of wrongdoing (i.e., sale of drugs or forgery), Dr.

---

[38] *In re Reardon*, 759 A.2d 568, 577 (Del. 2000).
[39] Opening Br. at 14.

13

Bilski's records do not document the suspicion or indicate an attempt to contact the system partners, such as the pharmacy, to prevent potential illegal activity.

While it is true that the misconduct may have only involved two patients, the carelessness and lack of attention to them spanned over the course of two years and included more than sixty (60) plus specifically identified instances of inadequate documentation practices. This was more than a single wrong.

For the reasons above, this Court finds that there is substantial evidence to support the Board's decision that Dr. Bilski's conduct amounted to a pattern of negligence.

## IV. *Dr. Bilski Received Constitutionally Sufficient Notice*

A professional license is a protected property interest, and to comport with due process the licensee has a right to be heard at a meaningful time and in a meaningful manner.[40] This requirement mandates notice of charges sufficient for a respondent to prepare a defense.[41]

Dr. Bilski argues that he did not receive proper notice and compares the notice provided in this case to the insufficient notice in *Cain v. Delaware Bd. Of*

---

[40] *Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950); *Slawik v. State*, 480 A.2d 636, 645 (Del. 1984).
[41] *Goldberg v. Kelly*, 387 U.S. 254 (1970); *Cyric W. Cain, P.A. v. Delaware State Bd. of Accountancy*, 1989 WL 135766 (Del. Super. Oct. 3, 1989).

*Accountancy.*[42]  This Court disagrees with Dr. Bilski's proposition regarding the adequacy of his notice.

In *Cain*, a licensed accountant received a copy of a complaint filed by a former client, along with notification from the Board of Accountancy that a hearing would be held.[43]  On appeal, the Superior Court held that the complaint in *Cain* did not provide adequate notice that Cain's adherence to GAAP would be at issue.  The *Cain* Court clearly set out the applicable standard for notice in this type of hearing:

> To be effective, the notice must be such that the individual to whom it is directed knows what professional violations are in issue. This does not mean that a complaint issued by an administrative board must satisfy the pleading rules of this Court. Nor does this mean that the complaint and the ultimate holding of the Board must mesh with precision. A complaint is sufficient if a reasonable person reading it knows what conduct and alleged professional responsibilities are at issue. Where this standard has been met due process is preserved since the party before the Board has an adequate opportunity to prepare a defense.[44]

---

[42] *Cyric W. Cain, P.A. v. Delaware State Bd. of Accountancy*, 1989 WL 135766 (Del. Super. Oct. 3, 1989).

[43] The former client's complaint "focused primarily on a fee dispute and charged [Cain] with unethical and fraudulent conduct . . . it did not allege that [Cain's] conduct violated any specific or general provisions of GAAP," Generally Accepted Accounting Principles.  The day after Cain received the notice, he and the client reached an agreement whereby Cain returned the clients records and fees in exchange for the withdrawal of the complaint with the Board.  Nonetheless, the Board proceeded with the hearing and ultimately concluded that Cain's records were not prepared in accordance with GAAP. *See Id.*

[44] *Id*.

The complaint here satisfies the standard of notice under *Cain*. Dr. Bilski was provided with a DOJ complaint that identifies his failure to properly document medical charts while prescribing substances. The complaint further states that this conduct "violated the following provisions of . . . [24 *Del. C.* §] 1731(b)(11) in that he engaged in misconduct and . . . a pattern of negligence in the practice of medicine."[45] Therefore, this Court finds that Dr. Bilski received proper notice.

### V. *Any Impropriety in the Hearing Officer's Reliance on the Model Policy Was Cured by the Board's Decision*

In his final claim, Dr. Bilski argues that the Hearing Officer erred as a matter of law by concluding that the Model Policy created mandatory requirements. This Court is not persuaded by this argument. Under appellate review is the Board's decision, not the Hearing Officer's recommendation. While it is true that the Board is, in general, bound by the findings of fact made by the Hearing Officer,[46] in this case, the Board specifically noted that it did "not accept the hearing officer's rationale that a violation of the Model Policy prior to its promulgation as a regulation can act as a *per se* deviation from the standard of care."[47] As the Board rejected this recommendation and determined that Dr. Bilski engaged in misconduct and a pattern of negligence in the practice of medicine, this Court does

---

[45] Complaint at ¶26(d).
[46] 29 Del. C. 8735(v)(1)d.
[47] Board Order at 3.

not consider arguments with respect to the Model Policy and this decision is based solely on the Board's final decision.

## CONCLUSION

In light of the forgoing, this Court concludes that there was substantial evidence to support the decision of the Board and that it was free from any errors of law. Accordingly, it is hereby **AFFIRMED**.[48]

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

cc:     Prothonotary

---

[48] Dr. Bilski's demand for attorney's fees, premised on the illegality of the Board's decision is also denied.