In the Matter of a Member of the Bar of the Supreme Court, of the State of Delaware,

**Michael R. DAVIS, Respondent.**

No. 301, 2008.

Supreme Court of Delaware.

Submitted: April 29, 2009.
Decided: May 27, 2009.

Michael S. McGinniss, Esquire, Office of Disciplinary Counsel, Wilmington, Delaware.

Charles Slanina, Esquire, of Finger, Slanina & Liebesman, LLC, Hockessin, Delaware for Respondent.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices.

PER CURIAM.

This is an attorney disciplinary proceeding. Respondent, Michael R. Davis, stipulated to the relevant facts, violations, and proposed sanctions arising from a 14 count petition filed by the Office of Disciplinary Counsel ("ODC"). In brief, the petition alleges a series of real estate transactions, in which Davis was the purchaser, that were falsely notarized. In addition, Davis failed to pay transfer taxes on one of those transactions, and restated the purchase price on two other transactions in order to substantially reduce his transfer tax liability. The parties agreed that a public reprimand and certain practice restrictions would be the appropriate sanction. After

carefully reviewing the record, the Court concludes that, in addition to the sanctions recommended by the Board on Professional Responsibility (the "Board"), Davis should be suspended for one year beginning on the date of this decision.

## FACTS

Davis was admitted to the Delaware Bar in 1998 and worked for five years in mergers and acquisitions at Skadden, Arps, Slate, Meagher & Flom LLP. During that time, he began investing in real estate. In 2003, he started practicing real estate law at Ward & Taylor, LLC. In May 2007, after his law firm discovered certain irregularities in its files, Davis left the law firm and "self-reported" to ODC two real estate transactions in which he was the purchaser and transfer tax forms were altered to reduce the amount owed in transfer tax. During its investigation, ODC discovered that Davis falsely notarized mortgages and tax filings relating to property that he purchased during the period from September 2004 through February 2007. ODC also discovered that Davis had not paid $48,000 in transfer taxes on the home he purchased in May 2005. ODC filed a 14 count petition alleging violations of several Delaware Lawyers' Rules of Professional Conduct. The parties presented this matter to the Board on a stipulation of admitted facts, admitted violations, aggravating and mitigating factors, and recommended sanctions.

## FALSE NOTARIZATIONS

Davis executed six mortgages and one Affidavit of Exemption that purport to be notarized by William E. Ward. According to Davis, after he executed the documents, he gave them to a staff person in his office and instructed that person to have Mr. Ward notarize them. It is undisputed that Mr. Ward never signed any of the notarizations. Davis explained that he would never have done such a thing with a client's documents, but that these transactions involved his own investments and he took care of them after business hours. As a result, he "regularly" executed documents and had them notarized at some other time. Davis also thought that the false notarizations were not that important because he knew the lenders and he knew that he would never disavow his signature on the documents.

## FAILURE TO PAY TRANSFER TAX

When Davis and his wife purchased their home on Red Oak Road in 2005, they were also selling another home, and buying and selling the lot next to their new home. Davis described it as a "very difficult and complicated transaction,"[1] for which he hired an independent contractor paralegal to prepare the paperwork. After the closing, Davis testified that there were "some out of balance entries," but that "[a]t no time ... did [he] receive funds that should have been allocated to somebody else or allocated to the state. And that is ... why ... [he] did not realize that the taxes had not been paid until this proceeding commenced."[2]

Although it is true that Davis did not receive a check from the seller, Davis did receive a $48,000 reduction in the amount he paid to purchase the property. That reduction included $24,000 that the seller had allocated to transfer taxes. On a revised, unsigned settlement sheet, the parties' transfer taxes were listed as zero, and a $24,000 "repair credit" was listed as a reduction in the amount due the seller. That revised settlement sheet was the one

---

**1.** Board Hearing Transcript at 15.

**2.** *Id.* at 16.

designed to address the "out of balance" entries. Davis suggested at one point that the transfer tax checks were cut and that somehow they were never paid. When a Board member asked him where the missing $48,000 went, Davis admitted that the money was not missing; it was used to reduce his payment to the seller.

The ODC and the Board apparently accepted Davis's claim that he never realized that the taxes had not been paid, and that he did not benefit from the non-payment. Interestingly, if the falsely notarized Affidavit of Exemption had not misstated the property that was subject to the exemption, the unpaid transfer taxes would have come to light immediately because the deed to the property would not have been accepted for filing. So, the record facts are that a real estate attorney who was purchasing a $1.1 million home for himself did not review the settlement sheet, the deed, or the Affidavit of Exemption carefully enough to see any errors, and those errors allowed the transaction to be completed without discovery of the missing tax payments. Davis's explanation was that he made a mistake in relying on the outsourced paralegal to draft all of the paperwork. After he left Ward and Taylor, LLC, however, Davis hired her to work in his solo practice.

## THE DISMISSED CHARGES

The ODC and Davis stipulated to the dismissal of the two counts that were potentially the most serious. Davis purchased two investment properties from the same owner in February 2007. The Form HUD–1 (settlement statement) for the first purchase listed the sale price as $162,500, resulting in a combined transfer tax of $4,875. With the seller's consent,

Davis revised the Affidavits of Gain and Value to reflect the amount of consideration received as being $40,000, resulting in a reduced tax liability of $600 (which was the amount paid). Similar revisions were made in the second transaction, where the purchase price was listed as $212,500, but the Affidavits of Gain and Value were revised to reflect consideration in the amount of $60,000. That modification caused the transfer tax to be reduced from $3,187.50 to $900.[3] After a staff person at Ward and Taylor, LLC told the firm's partners about the altered tax forms, the firm placed Davis on administrative leave and instructed him to report the matter to ODC.

Davis convinced the ODC and the Board to dismiss the charges relating to those transactions by obtaining a letter from a tax attorney. The letter outlined how Davis arrived at the values he included in the revised affidavits. For the purchase where Davis reduced the sales price from $212,500 to $60,000, the tax letter explains:

> The seller provided 100% purchase money financing. The purchase money note provided for monthly payments with interest at 6% per annum with a maturity date of one year following settlement.

\* \* \*

> You told me that the property was not subject to lease at the time of settlement and that your intention was to lease it for one year then sell the property. You projected gross rental income of $16,500 for the year.... You believe that the market value of the property, based on sales of comparable properties, was $256,000 and that the value of the transaction involving the purchase, lease then

---

**3.** Davis agreed to indemnify the sellers if the taxing authorities sought to recover the additional amounts.

resale of the property was $60,000 ($256,000 minus $212,500 plus $16,500). Realty transfer taxes were paid based on this $60,000 transaction value.

The tax letter describes a similar calculation for the other transaction, as well as a third transaction (involving an adjustment from $590,000 to $150,000) that the ODC never included in its petition. The tax letter then discusses different definitions of "value," none of which relate to Davis's valuation, and notes that "the values you used are based on factors with real economic substance." The tax letter concludes that "the manner in which you determined value is not without support," and that Davis could have avoided all transfer taxes if he had structured his deals as conditional sales agreements. The tax letter fails to note that the seller was not interested in a conditional sale agreement.

As with the $48,000 in transfer taxes for the Red Oak Road property, Davis paid the full transfer taxes on the two transactions that were the subject of ODC's original petition at the time that his former firm required him to "self-report" to ODC. Davis never paid the additional transfer tax on the third such transaction, apparently because it was not included in ODC's petition.

## SUPREME COURT REVIEW

■■■■ The Board held a hearing to consider the stipulated facts, violations, and recommendation of sanctions. The Board accepted the stipulated record, found the stated violations, and recommended the stipulated sanction—a public reprimand and permanent practice limitations.[4] The Supreme Court reviews the record independently to determine whether there is substantial evidence to support the Board's factual findings. We review the Board's conclusions of law *de novo*, and we consider the Board's recommended sanction helpful, but it is not binding.[5]

■■■■ There is substantial evidence to support the underlying facts. The conclusion that Davis's conduct was negligent, rather than knowing, however, is not supported by the record. Davis testified at the Board hearing, but he was never cross-examined. As a result, the Board determined that Davis had been negligent because, "[a]t the hearing Respondent admitted that he had acted negligently . . . ."[6] No one asked any probing questions about how someone who was handling the purchase of his own home could fail to check the paperwork. Moreover, after the settlement sheet had to be tweaked because it did not balance, we find it unreasonable to assume that an attorney did not notice an entry for "repairs" costing $24,000 when he knew that no repairs had been done.

Davis's failure to pay transfer taxes on his own property is but one instance of misconduct in a larger pattern of false notarizations and paperwork errors that all redounded to Davis's financial benefit. In addition, his handling of the two transactions that were dismissed, was undeniably "knowing" and was deceptive, if not criminal. Davis purchased properties, obtained deeds and fee simple ownership. The Settlement Statements listed the contract prices and the taxes due. The Affi-

4. The Board recommended one additional practice restriction to those suggested by ODC and Davis. A copy of the Board's report to this Court is attached.

5. *In re Reardon*, 759 A.2d 568, 575 (Del.2000).

6. Board on Professional Responsibility Report at 15. See, also: Report at 16 ("[T]he record supports the *stipulated negligence* of Respondent in the Red Oak transaction.") (Emphasis added.)

davits of Gain and Value also listed the contract prices and the taxes due based on those prices. But, the numbers were altered before the documents were filed.

The tax letter that apparently saved Davis from having to defend this conduct states that Davis's approach to determining value was "non-traditional." The letter relies heavily on the fact that Davis could have avoided transfer taxes if the sellers had retained title and the parties had executed conditional sales contracts. But the sellers did not want to retain title and the documentation for each of the transactions clearly provides for a fee simple transfer. In sum, we view the altered values in the dismissed charges as further evidence of a course of conduct that is unacceptable for Delaware lawyers.[7] Moreover, we find that Davis's admitted manipulation of the sales and tax figures in the two dismissed charges is compelling evidence that the errors and resulting failure to pay taxes on the purchase of Davis's home was knowing, not negligent.

■■■ Having concluded that Davis engaged in knowing misconduct, the remaining issue is the appropriate sanction. The Board correctly cited the factors we consider in resolving disciplinary matters:

> The objectives of the lawyer disciplinary system are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct. To further these objectives ... the Court looks to the ABA Standards for Imposing Lawyer Sanctions as a model for determining the appropriate discipline warranted under the circumstances of each case. The ABA framework consists of four key factors ...: (a)

the ethical duty violated; (b) the lawyer's mental state; (c) the extent of the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.[8]

■■■ Davis violated Rules 1.15(a), 1.15(b), 8.4(a), 8.4(c), and 8.4(d) of the Delaware Lawyers' Rules of Professional Conduct. These violations stem from: i) his repeatedly causing staff members to falsely notarize mortgages and tax filings; ii) his failure to pay transfer taxes; iii) his failure to segregate third parties' funds; and iv) his misrepresenting the basis for tax exemptions on tax filings. In addition, although the two counts relating to this conduct were dismissed at ODC's request, Davis admitted that he restated the consideration received in two real estate transactions for the purpose of reducing the transfer taxes payable on those transactions. The record also establishes that he restated the consideration on a third transaction, and never repaid the taxing authorities for that restatement.

Davis's conduct was knowing, and caused both actual and potential injury. Davis failed to pay $48,000 in taxes, which included $24,000 owed by the seller. The fact that he paid the taxes after being charged by ODC does not mean that there was no injury. Davis placed the seller in jeopardy by pocketing her funds and he attempted to cheat the taxing authorities by not paying taxes. That conduct seriously injures the integrity of the legal profession, even if payment is made after the misconduct is exposed. The false notarizations also caused serious injury to the profession. Davis impaired Mr. Ward's good name by having a staff per-

---

**7.** We have not lost sight of the fact that these charges were dismissed. The facts relating to those charges, however, are part of the stipulated record, which we review in its entirety.

**8.** *In re Bailey*, 821 A.2d 851, 866 (Del.2003).

son forge his signature on numerous recorded documents.

The Board found nothing in the aggravating or mitigating factors to alter the sanctions proposed by the parties. Based on our review, the aggravating factors must include the fact that Davis's misconduct was undertaken for personal financial gain, and that his misconduct was knowing. After considering all the circumstances, we conclude that a one year suspension is the appropriate sanction. Davis's misconduct involved false notarizations, failure to safeguard fiduciary funds, failure to pay taxes, and misrepresentation. The sanction we impose is consistent with our decisions in *In re Figliola*[9] (suspension for knowing and reckless misappropriation of client and Firm funds); *In re Faraone*[10] (suspension for knowing assistance to client in a scheme to defraud State and County of real estate transfer taxes); *In re Pankowski*[11] (suspension for false notarizations, failure to safeguard client funds and related misconduct); and *In re Landis*[12] (suspension for failure to pay employee payroll taxes and personal income taxes and related misconduct).

NOW, THEREFORE, IT IS ORDERED that Davis be disciplined as follows:

1) that Davis be suspended from engaging in the practice of law as a member of the Delaware Bar for a period of one year, commencing on the date of this decision;

2) that during the period of suspension, Davis shall not: (a) share in any legal fees arising from clients or cases referred by Davis during the period of suspension to any other attorney, or (b) share in any legal fees earned for services by others during such period of suspension;

3) that, if Davis seeks and obtains reinstatement following the period of suspension, he shall be subject to the following permanent restrictions on the nature and/or extent of his future practice of law:

(a) In any real estate closing in which either Davis, or a business entity in which he has an ownership interest, is a party to the transaction, Davis shall not act as the lawyer/settlement agent. Under such circumstances, Davis shall make arrangements for the closing to be conducted by another attorney who is not a party to the transaction.

(b) In any real estate closing in which either Davis, or a business entity in which he has an ownership interest, is a party to the transaction, Davis shall not act as a notary for any documents relating to the transaction.

(c) Davis shall not direct any person to have any documents notarized that are not signed or attested to, or would not be signed or attested to, in the presence of a notarial officer.

4) that, following reinstatement, Davis shall be subject to the following conditions for a two-year period:

(a) Davis shall have completed an audit by a licensed certified public accountant for his Certificates of Compliance, reporting the status of his compliance, or lack thereof, with the requirements of Rule 1.15 and Rule 1.15(a), and shall file each annual Certificate of Compliance by no later than February 1 of each of those years. Davis also shall provide ODC with a timely written confirmation that he has filed each annual Certificate of Compliance with the required pre-certification.

9. 652 A.2d 1071 (Del.1995).

10. 722 A.2d 1 (Del.1998).

11. 2007 WL 4245472 (Del.2007)

12. 850 A.2d 291 (Del.2004).

(b) Davis shall file and pay, on a timely basis, all federal, state and local payroll, gross receipts, and income taxes owed for his law practice. Davis also shall file and pay, on a timely basis, all transfer taxes owed for any real estate transactions in which he has a personal or business financial interest.

(c) Davis shall cooperate promptly and fully with ODC in its efforts to monitor compliance with these conditions, including any audit performed at the request of ODC or otherwise. Davis also shall cooperate with ODC's investigation of any allegations of unprofessional conduct that may come to the attention of ODC. Upon request of ODC, Davis shall provide authorization for release of information and documentation to verify compliance with these conditions.

(d) Davis shall pay the costs of this disciplinary proceeding, pursuant to Rule 27 of the Delaware Lawyers' Rules of Disciplinary Procedure, promptly upon being presented with a statement of those costs by ODC. The costs to be paid by Davis will include, without limitation, the full cost of investigative audit work concerning Davis's professional conduct, which was performed by Mr. Joseph McCullough at the request of ODC.

5) that this Opinion and Order shall be disseminated by ODC in accordance with the Rules of the Board on Professional Responsibility.

## ATTACHMENT

## BOARD ON PROFESSIONAL RESPONSIBILITY

## OF THE

## SUPREME COURT OF THE STATE OF DELAWARE

In the Matter of a Member of the Bar of the Supreme Court of Delaware:

MICHAEL R. DAVIS, Respondent.

*CONFIDENTIAL*

ODC File Nos.2007–0044–B, 2007–0130–B, and 2007–0200–B

Pending before the Board on Professional Responsibility is a Petition for Discipline filed on March 5, 2008 ("Petition"). The Petition alleges that Michael R. Davis, Esq. ("Davis" or "Respondent") engaged in professional misconduct in violation of Rules 1.15(a), 1.15(b), 8.4(a), 8.4(c), and 8.4(d) of the Delaware Lawyers' Rules of Professional Misconduct ("Rules"). Mr. Davis is a real estate attorney and the alleged misconduct involved real estate transactions in which he had an interest, directly or indirectly, and in which he acted as counsel and/or settlement agent. Mr. Davis through counsel responded to the Petition on March 25, 2008. On April 17, 2008, the parties submitted a Joint Prehearing Stipulation ("JPS") in which Respondent admitted to certain misconduct and consented to certain sanctions. The Panel conducted a hearing on April 23, 2008. Based on the evidence presented at the hearing, and for the reasons stated below, the Panel recommends that that Mr. Davis be sanctioned as set forth in Section E.4 of this opinion.

## A. FACTS

The parties stipulated to the following facts, all of which are taken directly from the JPS:

1. The Respondent is a member of the Bar of the Supreme Court of Delaware, He was admitted to the Bar in 1998. At all times relevant to the Petition until May 2007, the Respondent was engaged in the private practice of law in Delaware with the law firm of Ward & Taylor, LLC

("Ward & Taylor"). The Respondent is presently engaged in the private practice of law in Delaware as a solo practitioner.

## I. ODC File No.2007–0044–B

### A. 1516 Binder Lane

2. On February 8, 2007, on behalf of Faulkland Paradigm, LLC ("Faulkland") (a business entity for which he was at that time a principal), the Respondent acted as the settlement agent for Faulkland's purchase of 1516 Binder Lane, Wilmington, DE 19805 (the "1516 Binder Lane transaction") from seller J & S Gerson Family Limited Partnership.

3. On the Form HUD–1 prepared for the February 8, 2007 closing, the total consideration exchanged/purchase price for the 1516 Binder Lane transaction was identified as $162,500.00, and, based on that figure, a combined total of $4,875.00 in transfer taxes was identified as due for collection from the parties and for payment to the State of Delaware ("State") and New Castle County ("County").

4. The State and County Realty Transfer Tax Returns and Affidavits of Gain and Value prepared for the 1516 Binder Lane transaction were subsequently revised, with the knowledge and consent of the parties to the transaction, including the seller, Mr. Gerson. Specifically, these revisions consisted of (1) reducing the "amount of consideration received" from $162,500.00—the contract sales price on the Form HUD–1 for the 1516 Binder Lane transaction—to $40,000.00, and (2) reducing the "Tax Due and Payable" from $2,437.50 to $600.00. These revisions were made after Mr. Gerson had signed the documents and those signatures were notarized on February 5, 2007 in the State of Florida. The Respondent directed a legal assistant, Ms. Jennifer Everson, to file the documents with the State and County authorities.

### B. 1302 Clifford Road

5. On February 8, 2007, on behalf of Faulkland, the Respondent acted as the settlement agent for Faulkland's purchase of 1302 Clifford Road, Wilmington, DE 19805 (the "1302 Clifford Road transaction") from seller J & S Gerson Family Limited Partnership.

6. On the Form HUD–1 prepared for the February 8, 2007 closing, the total consideration exchanged/purchase price for the 1302 Clifford Road transaction was identified as $212,500.00, and, based on that figure, a combined total of $6,375.00 in transfer taxes was identified as due for collection from the parties and for payment to the State and County.

7. The State and County Realty Transfer Tax Returns and Affidavits of Gain and Value prepared for the 1302 Clifford Road transaction were subsequently revised, with the knowledge and consent of the parties to the transaction, including the seller, Mr. Gerson. Specifically, these revisions consisted of (1) reducing the "amount of consideration received" from $212,500.00—the contract sales price on the Form HUD–1 for the 1302 Clifford Road transaction—to $60,000.00, and (2) reducing the "Tax Due and Payable" from $3,187.50 to $900.00. These revisions were made after the seller, Mr. Gerson, had signed the documents and those signatures were notarized on February 5, 2007 in the State of Florida. The Respondent directed a legal assistant, Ms. Everson, to file the documents with the State and County authorities.

### C. Reporting of the February 2007 Transactions

8. By letter dated May 16, 2007, the Respondent, by and through his counsel,

reported to the ODC concerns raised by Ward & Taylor with him regarding the 1516 Binder Lane and 1302 Clifford Road transactions.

## II. *ODC File No.2007–0130–B*

### A. *3 Red Oak Road*

9. On May 27, 2005, on behalf of himself, the Respondent acted as the settlement agent for the purchase of 3 Red Oak Road, Wilmington, DE 19806 (the "3 Red Oak Road Transaction") from seller Ms. Paula J. Malone ("Malone") for use as a personal residence. The property was comprised of two parcels, a house and a vacant lot. On or about the same date, the Respondent acted as the settlement agent for the sale of the vacant lot (referred to by the parties as "2 Red Oak Road") to a business entity wholly owned by Mr. William Freeborn ("Freeborn").

10. By law, based on the total consideration exchanged/purchase price of $1.6 million, no less than $48,000.00 in transfer taxes was due to be paid to the State and to the City of Wilmington ("City") for the 3 Red Oak Road Transaction.

11. As reflected by the Form HUD–1 signed by the parties at the May 27, 2005 closing (the "At–Closing 3 Red Oak Road HUD–1"), and distributed to Malone and Malone's real estate agent, the Respondent collected $7,500.00 from Freeborn (the purchaser of the vacant lot) for payment of Freeborn's share of the transfer taxes on the $500,000.00 sale of the vacant lot to Freeborn.

12. As reflected by the At–Closing 3 Red Oak Road HUD–1, the Respondent withheld $24,000.00 from Malone's proceeds of the 3 Red Oak Road Transaction for payment of her share of the transfer taxes on Malone's sale of the two Red Oak Road properties.

13. The At–Closing 3 Red Oak Road HUD–1 contains a signature by Malone as the seller, signatures of the Respondent and Ms. Davis as borrowers, and a signature by the Respondent as the "Settlement Agent."

14. In Ward & Taylor's accounting records for the 3 Red Oak Road Transaction, there are two entries in the amount of $24,000.00 each noted as "Pending Checks" for "City/County Tax/Stamps" and "State Tax/Stamps." However, the firm's records reflect that no checks in these amounts were actually prepared or issued for payment in the 3 Red Oak Road Transaction.

15. The Respondent failed to pay the $48,000.00 in transfer taxes due and owing by law for the 3 Red Oak Road Transaction until January 24, 2008.

\*     \*     \*     \*     \*     \*

16. In July 2005, the Respondent filed with the City (1) a Realty Transfer Tax Return and Affidavit of Gain and Value ("3 Red Oak Road Transfer Tax Return") and (2) an Affidavit of Exemption from City of Wilmington Transfer Tax ("3 Red Oak Road Affidavit of Exemption") for the 3 Red Oak Road Transaction.

17. By his own signature on the 3 Red Oak Road Transfer Tax Return, the Respondent represented that he had notarized Malone's signature on this document on May 27, 2005. The Respondent signed, and dated May 27, 2005, the 3 Red Oak Road Affidavit of Exemption.

18. The 3 Red Oak Road Transfer Tax Return contained a representation that the transaction was exempt from transfer tax payment obligations because it was a "Parent—Child Transfer." In the 3 Red Oak Road Affidavit of Exemption, the Respondent represented to the City that this transaction was exempt from transfer tax payment obligations on the ground that it was a "Parent and Child" transfer. Ma-

lone is neither the parent nor the child of the Respondent or Ms. Davis.

19. Although the overall transaction, a $1.6 million sale of 3 Red Oak Road from Malone to the Respondent, was not exempt from transfer taxes on any basis, the sale of the vacant lot (2 Red Oak Road) was exempt from transfer taxes as a "straw party" transaction. The line on the pre-printed Affidavit of Exemption form for "Trustee/straw party" is directly under the line for "Parent and Child." However, on the 3 Red Oak Road Transfer Tax Return, the words "Parent—Child Transfer" were typed out by the person (not the Respondent) preparing the form under "PART D—EXEMPT CONVEYANCES," and the words "Parent + child" were handwritten in close proximity to that entry.

20. The 3 Red Oak Road Affidavit of Exemption purports to have been "SWORN TO AND SUBSCRIBED" before Ward and notarized by him on May 27, 2005. However, the Respondent signed this document outside of Ward's presence, and provided it to another person along with a direction to obtain Ward's notarization.

### III.  *ODC File No.2007–0200–B*

#### A.  *1600 North Broom Street*

21. On or about September 29, 2004, the Respondent acted as the settlement agent for Ms purchase of 1600 North Broom Street, Wilmington, DE 19806 (the "1600 North Broom Street transaction") from seller Mr. Bruce D. Balick ("Balick"). The Respondent obtained financing from Chase Manhattan Mortgage Corporation ("Chase") for this purchase. On September 30, 2004, the Respondent sold this property to Sunset Point Properties, LLC ("Sunset"), a company owned by him.

22. As the settlement agent for this purchase transaction, the Respondent had a professional obligation to ensure that the transaction was appropriately documented, including by obtaining notarizations performed in accordance with proper legal procedures.

23. The mortgage for the 1600 North Broom Street transaction purports that the instrument was "acknowledged before" Ward and notarized by him on September 30, 2004, However, the Respondent signed this document outside of Ward's presence, and then provided it to another person along with a direction to obtain Ward's notarization.

#### B.  *1311 North Clayton Street*

24. On or about September 29, 2004, the Respondent acted as the settlement agent for his purchase of 1311 North Clayton Street, Wilmington, DE 19806 (the "1311 North Clayton Street transaction") from seller Balick. The Respondent obtained financing from Chase for this purchase. On September 30, 2004, the Respondent sold this property to Sunset.

25. As the settlement agent for this purchase transaction, the Respondent had a professional obligation to ensure that the transaction was appropriately documented, including by obtaining notarizations performed in accordance with proper legal procedures.

26. The mortgage for the 1311 North Clayton Street transaction purports that the instrument was "acknowledged before" Ward and notarized by him on September 30, 2004. However, the Respondent signed this document outside of Ward's presence, and then provided it to another person along with a direction to obtain Ward's notarization.

### C. *1603 North Rodney Street*

27. On or about September 29, 2004, the Respondent acted as the settlement agent for his purchase of 1603 North Rodney Street, Wilmington, DE 19806 (the "1603 North Rodney Street transaction") from seller Balick. The Respondent obtained financing from Chase for this purchase. On September 30, 2004, the Respondent sold this property to Sunset.

28. As the settlement agent for this purchase transaction, the Respondent had a professional obligation to ensure that the transaction was appropriately documented, including by obtaining notarizations performed in accordance with proper legal procedures.

29. The mortgage for the 1603 North Rodney Street transaction purports that the instrument was "acknowledged before" Ward and notarized by him on September 30, 2004. However, the Respondent signed this document outside of Ward's presence, and then provided it to another person along with a direction to obtain Ward's notarization.

### D. *1311 Gilpin Avenue*

30. On May 27, 2005, the Respondent acted as the settlement agent for his purchase of 1311 Gilpin Avenue, Wilmington, DE 19806 (the "1311 Gilpin Avenue transaction") from seller CIELO Investments, LLC. The Respondent obtained financing from GMAC Bank for this purchase. On May 28, 2005, the Respondent sold this property to Sunset.

31. As the settlement agent for this purchase transaction, the Respondent had a professional obligation to ensure that the transaction was appropriately documented, including by obtaining notarizations performed in accordance with proper legal procedures.

32. The mortgage for the 1311 Gilpin Avenue transaction purports that the instrument was "acknowledged before" Ward and notarized by him on May 27, 2005. However, the Respondent signed this document outside of Ward's presence, and then provided it to another person along with a direction to obtain Ward's notarization.

### E. *3 Red Oak Road—Purchase*

33. On May 27, 2005, on behalf of himself, the Respondent acted as the settlement agent for the purchase of 3 Red Oak Road, Wilmington, DE 19806 (the "3 Red Oak Road transaction") from seller Paula J. Malone for use as a personal residence.

34. As the settlement agent for this purchase transaction, the Respondent had a professional obligation to ensure that the transaction was appropriately documented, including by obtaining notarizations performed in accordance with proper legal procedures.

35. The mortgage for the 3 Red Oak Road transaction purports that the instrument was "acknowledged before" Ward and notarized by him on May 27, 2005. However, the Respondent signed this document outside of Ward's presence, and then provided it to another person along with a direction to obtain Ward's notarization.

### F. *3 Red Oak Road—Home Equity Line of Credit*

36. On October 10, 2005, on behalf of himself, the Respondent acted as the settlement agent in obtaining a home equity line of credit mortgage on the Respondent's personal residence, 3 Red Oak Road, Wilmington, DE 19806 (the "3 Red Oak Road Home Equity Loan").

37. As the settlement agent for this home equity loan transaction, the Respondent had a professional obligation to en-

sure that the transaction was appropriately documented, including by obtaining notarizations performed in accordance with proper legal procedures.

38. The mortgage for the 3 Red Oak Road Home Equity transaction purports that the instrument was "acknowledged before" Ward and notarized by him on October 10, 2005. However, the Respondent signed this document outside of Ward's presence, and then provided it to another person along with a direction to obtain Ward's notarization.

## B. THE ALLEGATIONS IN THE PETITION

The ODC alleged fourteen counts of professional misconduct. Count One alleged that by directing another person to change the State and County Realty Transfer Tax Returns and Affidavits of Gain and Value for the 1516 Binder Lane transaction, Respondent violated Rule 8.4(a). That Rule provides that it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another." Count Two alleges the same misconduct in connection with the 1302 Clifford Road transaction. Count Three alleges that by failing to pay $48,000 due and owing for a transaction involving 3 Red Oak Road, Respondent violated Rule 1.15(d) which provides that "a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." Count Four alleges that by failing to pay the $48,000 in transfer taxes due and owing for the Red Oak Road transaction on a timely basis, Respondent violated Rule 8.4(d) which pro-

vides that it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice." Count Five alleges that by collecting funds for transfer taxes at the May 27, 2005 settlement for the Red Oak transaction and not disbursing them for that purpose, Respondent violated Rule 1.15(a). Count Six alleges that by directing another person to have an Affidavit of Exemption for 3 Red Oak notarized by an attorney when the Respondent had not signed the affidavit in the attorney's presence, Respondent violated Rule 8.4(a) which provides that it is professional misconduct for a lawyer to "violate or attempt to violate the rules of Professional conduct, knowingly assist or induce another to do so or do so through the acts of another." Counts Seven and Eight allege that, by filing with the City of Wilmington the 3 Red Oak Road Realty Transfer Tax Return and Affidavit of Gain and Value and the 3 Red Oak Affidavit of Exemption, each of which misrepresented that the Red Oak transaction was exempt from taxation because of a parent-child relationship between buyer and seller, the Respondent violated Rule 8.4(c), which provides that it is professional misconduct for a lawyer to "engage in conduct involving . . . misrepresentation," and Rule 8.4(d), which provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Counts Nine through Fourteen allege that in five transactions in which he acted as settlement agent—1600 North Broom Street (Count Nine); 1311 North Clayton Street (Count Ten); 1603 North Rodney Street (Count Eleven); 1311 Gilpin Avenue (Count Twelve); 3 Red Oak Road (Counts Thirteen and Fourteen)—Respondent violated Rule 8.4(a) by directing another person to have documents notarized by an attorney even though the Respondent did not sign the documents in the attorney's presence.

## C. ADMITTED VIOLATIONS

The Respondent unconditionally admits in the JPS the following violations:

1. **Rule 1.15(b)** states that "a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." **Rule 8.4(d)** provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." By failing to pay the $48,000.00 in transfer taxes due and owing by law for the 3 Red Oak Road Transaction on a timely basis, the Respondent violated **Rules 1.15(b)** (Count Three) and **Rule 8.4(d)** (Count Four).

2. **Rule 1.15(a)** requires, in pertinent part, that a lawyer "shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property," and that property of clients or third persons must be appropriately safeguarded. By collecting, for the May 27, 2005 settlement on the Respondent's purchase of 3 Red Oak Road, $24,000.00 from Malone and $7,500.00 from Freeborn for transfer taxes due and owing by law, which funds were not remitted for that purpose, the Respondent violated **Rule 1.15(a)** (Count Five).

3. **Rule 8.4(c)** provides that it is professional misconduct for a lawyer to "engage in conduct involving . . . misrepresentation." **Rule 8.4(d)** provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." By filing with the City (1) the 3 Red Oak Road Realty Transfer Tax Return and Affidavit of Gain and Value and/or (2) the 3 Red Oak Road Affidavit of Exemption, each of which negligently misrepresented that this transaction was exempt from transfer tax payment obligations because of a parent-child relationship between buyer and seller, the Respondent violated **Rule 8.4(c)** (Count Seven) and **Rule 8.4(d)** (Count Eight).

4. **Rule 8.4(a)** provides that it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another." Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving . . . misrepresentation." The Respondent violated **Rule 8.4(a)** by:

(a) Directing another person to have the 3 Red Oak Affidavit of Exemption notarized by Ward, when the Respondent had not signed the document in Ward's presence (**Count Six**);

(b) Directing another person to have the mortgage for the 1600 North Broom Street transaction notarized by Ward, when the Respondent had not signed the document in Ward's presence (**Count Nine**);

(c) Directing another person to have the mortgage for the 1311 North Clayton Street transaction notarized by Ward, when the Respondent had not signed the document in Ward's presence (**Count Ten**);

(d) Directing another person to have the mortgage for the 1603 North Rodney Street transaction notarized by Ward, when the Respondent had not signed the document in Ward's presence (**Count Eleven**);

(e) Directing another person to have the mortgage for the 1311 Gilpin Avenue transaction notarized by Ward, when the Respondent had not signed the

document in Ward's presence (**Count Twelve**);

(f) Directing another person to have the mortgage for the 3 Red Oak Road transaction notarized by Ward, when the Respondent had not signed the document in Ward's presence (**Count Thirteen**); and

(g) Directing another person to have the mortgage for the 3 Red Oak Road Home Equity transaction notarized by Ward, when the Respondent had not signed the document in Ward's presence (**Count Fourteen**).

The ODC and the Respondent stipulate that (1) neither Ward nor the Respondent signed as the notary on any of the documents identified in paragraphs (a) through (g) above, and (2) Ward would testify that he did not authorize or instruct another person to do so. At the hearing, counsel for Respondent confirmed that "we have no reason to believe that Mr. Ward was the one that actually signed those documents." Tr. at 78.

## D. DISMISSED COUNTS

The ODC and the Respondent request that the Board dismiss **Counts One and Two** of the Petition, such that the charges in these disciplinary matters shall be limited to the twelve (12) violations admitted and set forth in Section II herein (**Counts Three through Fourteen**).

## E. STANDARD OF REVIEW

The Delaware Supreme Court has set forth the goals of the disciplinary system and the applicable standard:

The objectives of the lawyer disciplinary system are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct. To further these objectives and to promote consistency and predictability in the imposition of disciplinary sanctions, the Court looks to the ABA Standards for Imposing Lawyer Sanctions as a model for determining the appropriate discipline warranted under the circumstances of each case. The ABA framework consists of four key factors to be considered by the Court: (a) the ethical duty violated; (b) the lawyer's mental state; (c) the extent of the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.

*In Re Bailey,* 821 A.2d 851, 866 (Del.2003). The Delaware Supreme Court has also emphasized that the purpose of the rules is not to punish lawyers. *In Re Reardon,* 759 A.2d 568, 575 (Del.2000), citing *In Re Benge,* 754 A.2d 871, 879 (Del.2000).

### 1. The Ethical Duty Violated

Respondent has stipulated to violating duties owed the public, the legal system, and the legal profession. He did so by violating Rules 1.15(a), 1.15(b), 8.4(a), 8.4(c), and 8.4(d). The Panel regarded Counts One and Two of the Petition as containing serious allegations, and examined the underlying facts and the rationale for dropping the counts at length during the hearing. Based on that examination, the Panel concurs with the decision not to pursue these issues primarily for the following reasons:

a. The report from Thomas Mammarella, Esq. (JPS 4), which was not disputed, sets forth a credible basis for the computations used in the initial tax filings;

b. The seller, Mr. Gerson, signed the revised documents; and

c. The suspicious trail of documents and revisions, while not reflecting

ideal office procedures, was plausibly explained.[1]

## 2. The Lawyer's Mental State

At the hearing Respondent admitted that he had acted negligently in failing adequately to supervise transactions in which he had an interest. He ascribed that to putting his own matters last and paying insufficient attention to them. To a large degree, the professional misconduct occurred because the Respondent acted as counsel and settlement agent in transactions in which he had an interest. Much as a lawyer who represents himself has a fool for a client, it appears that Respondent as settlement agent for transactions in which he had an interest failed to provide the level of attention to detail to himself and his entities that he would have provided to clients. He failed to do so and as a result he had "a mess on his hands." Tr. at 43.

### a. The False Notarizations

Respondent at the hearing acknowledged that it was inappropriate for him as a member of the bar "to execute documents and then involve the staff in a procedure which I honestly knew did not fully comport with the requirements of my obligations or the obligations of any other attorney in the firm as a notary." Transcript of April 21, 2008 hearing at 14. Respondent's excuse was that the purpose for which the rule exists that a notary must personally observe a signatory attest to or execute a document which she notarizes—to ensure the accuracy of the documents and representations for the benefit of any who might rely upon it—was not

violated due to his close personal relationship with the lenders for whom he was executing documents. Nonetheless, "certainly, it was an inappropriate thing to do." *Id.* at 14. *See generally* David C. Johnson–Glebe, "Professional Integrity and the Delaware Lawyer," circulated by James T. McKinstry on behalf of the Board on Professional Responsibility of the Delaware Supreme Court, August 28, 1992 (noting that "'There was no harm done'", "The client was benefited by the false notarizations", or "The literal observance of notarial formalities is too inconvenient in many cases" are excuses with which "the courts generally have little patience" and that an attorney responsible for false notarizations can expect more than a private admonition).

### b. The Red Oak Transaction

The Panel finds that the record supports the stipulated negligence of Respondent in the Red Oak transaction. For example, Respondent testified that he was unaware that certain taxes totaling $48,000, which should have been collected and disbursed to the City of Wilmington and the State of Delaware in the Red Oak Transaction, in fact had not been collected and disbursed. The Panel finds disturbing that Respondent would sign an affidavit purporting to exempt a transaction in which Respondent had an interest from tax liability without reviewing it but Respondent testified that that is exactly what occurred. See Tr. at 29 ("I did not review it. I signed it. It was an exemption affidavit, which I expected to see in the transaction. And I didn't review it carefully at all.").

---

1. The Panel notes that, after learning of the allegations regarding the Binder Lane and Clifford Road transactions in the ODC complaint, and without conceding liability, Respondent paid the difference between the real estate transfer taxes he had paid and what would have been due if his characterization of the transactions were not accepted.

3. The Extent of the Actual or Potential Injury Caused by the Lawyer's Misconduct

Respondent has admitted that his professional misconduct prevented the State of Delaware and the City of Wilmington from receiving transfer taxes totaling $48,000. He also testified at the hearing that upon learning of the allegation following the filing of the ODC complaint, he contacted the relevant authorities and paid $24,000 each to the State of Delaware and the City of Wilmington. The record reflects that neither authority sought any penalties or taxes. Accordingly, the record reflects that whatever injury occurred was remedied to the satisfaction of the relevant tax authorities. The record does not reflect any particular injury to clients from the false notarizations but such conduct does cause injury to the integrity of the legal system and the legal profession.

Based on the foregoing, the Panel approves the parties' stipulation that Respondent receives a public reprimand and permanent practice restrictions, and assumes responsibility for the costs of the proceeding, including the initial investigation and report performed by Mr. McCullough on behalf of the ODC. The Panel believes that the evidence supports the admitted violations of the duty to refrain from engaging in "conduct involving ... misrepresentation." Rule 8.4(c). This conduct, coupled with the admitted negligent failure properly to pay transfer taxes to the State of Delaware and the State of Delaware in the Red Oak Transaction, warrants more than a mere private admonition and more than a mere public reprimand. Permanent practice restrictions of not acting as a lawyer/settlement agent in any real estate transaction in which he has an interest and not notarizing any documents in any transaction in which he has

an interest are also appropriate. The Panel believes that the practice limitations need to be extended to cover the admitted violations, i.e., directing another person to have documents notarized that were not signed or attested to in the presence of the notarial officer. Accordingly, the Panel recommends an additional item be added to the recommended sanction to prohibit Respondent from directing any person to have any documents notarized that are not signed or attested to, or would not be signed or attested to, in the presence of a notarial officer.

4. The Recommended Sanction

The Panel believes that with one adjustment as noted above, the sanctions to which the parties stipulated are appropriate. The stipulated sanctions are set forth below, except for Paragraph 2(c) which the Panel has added:

(1) The Respondent shall be publicly reprimanded for his violations of Rules 1.15(a), 1.15(b), 8.4(a), 8.4(c), and 8.4(d);

(2) The Respondent shall be subject to the following permanent restrictions on the nature and/or extent of his future law practice, as follows:

(a) In any real estate closing in which either the Respondent, or a business entity in which he has an ownership interest, is a party to the transaction, the Respondent shall not act as the lawyer/settlement agent. Under such circumstances, the Respondent shall make arrangements for the closing to be conducted by another attorney who is not a party to the transaction.

(b) In any real estate closing in which either the Respondent, or a business entity in which he has an ownership interest, is a party to the transaction, the Respondent shall not act as a notary for any documents relating to the transaction.

(c) Respondent shall not direct any person to have any documents notarized that are not signed or attested to, or would not be signed or attested to, in the presence of a notarial officer.

(3) The Respondent shall be subject to the following conditions for a two-year period:

(a) The Respondent shall have completed an audit by a licensed certified public accountant for his 2009 and 2010 Certificates of Compliance, reporting the status of his compliance, or lack thereof, with the requirements of Rule 1.15 and Rule 1.15A, and shall file each annual Certificate of Compliance by no later than February 1 of each of these years. The Respondent shall also provide the ODC with a timely written confirmation that he has filed each annual Certificate of Compliance with the required pre-certification;

(b) The Respondent shall file and pay on a timely basis any federal, state and local payroll, gross receipts, and income taxes owed for his law practice. The Respondent shall also file and pay on a timely basis any transfer taxes owed for any real estate transactions in which he has a personal or business financial interest.

(c) The Respondent shall cooperate promptly and fully with the ODC in its efforts to monitor compliance with these conditions, including any audit performed at the request of the ODC or otherwise. The Respondent shall also cooperate with the ODC's investigation of any allegations of unprofessional conduct which may come to the attention of the ODC. Upon request of the ODC, the Respondent shall provide authorization for release of information and documentation to verify compliance with these conditions.

(d) The Respondent shall pay the costs of these disciplinary proceedings pursuant to Rule 27 of the Delaware Lawyers' Rules of Disciplinary Procedure, promptly upon being presented with a statement of these costs by the ODC. The costs to be paid by the Respondent will include, without limitation, the full cost of all investigative audit work concerning the Respondent's professional conduct, which was performed by Mr. Joseph McCullough at the request of the ODC.

The Panel agrees that the record supports the entry of a public reprimand, permanent practice conditions and Respondent paying for all costs of the proceeding, as set forth above. The Panel believes that the practice limitations need to be extended to cover the admitted violations, i.e., directing another person to have documents notarized that were not signed or attested to in the presence of the notarial officer. Accordingly, the Panel recommends that item 2 of the recommended sanction be expanded to include in 2(c) a prohibition against Respondent directing another person to have any documents notarized that are not signed or attested to, or would not be signed or attested to, in the presence of a notarial officer. Item 2(c) would read: "Respondent shall not direct any person to have any documents notarized that are not signed or attested to, or would not be signed or attested to, in the presence of a notarial officer."

5. Aggravating or Mitigating Factors.

The parties have stipulated that the aggravating factors are that Respondent engaged in a pattern of misconduct with respect to improper notarization procedures and the Respondent committed multiple disciplinary offenses.

The parties stipulated that the mitigating factors were that the Respondent has no prior disciplinary record, cooperated with the ODC's investigation, was inexperienced as a solo practitioner, and his char-

acter and reputation is otherwise sound. The Panel accepts ODC's representation as to the letters which the ODC received vouching for the latter point and finds that the other factors are supported by the record. The Panel does not believe that these factors alter the judgment of the committee as to the appropriate sanction.

By: /s/ Lewis H. Lazarus
Lewis H. Lazarus, Esq.
Panel Chair

By: /s/ Kathleen Furey McDonough, Esq.
Kathleen Furey McDonough, Esq.

By: /s/ John Stafford
Mr. John Stafford

Dated: June 16, 2008