In re Mary Jo Lewis RYAN, a member
of the Bar of the Supreme Court of
the State of Delaware.

Supreme Court of Delaware.

Submitted: June 4, 1985.

Decided: Aug. 30, 1985.

John Noble of Parkowski, Noble &
Guerke, Dover, and Edgar Harris of Harris, Tropp and Smith, Media, Pa., for respondent.

L. Susan Faw, Disciplinary Counsel for
the Bd. on Professional Responsibility, Wilmington.

Before McNEILLY, HORSEY and
CHRISTIE, JJ.

## PER CURIAM:

The Board on Professional Responsibility
has publicly reprimanded Mary Jo Lewis
Ryan pursuant to Rules 1(c)(5) and 8(a)(5)
of the Board on Professional Responsibility. In addition, pursuant to Rules 1(c)(6)
and 8(a)(4) the Board has recommended
probation for a period of two years under
certain conditions, subject to the approval
of the Court. The sanctions and recommendations followed a hearing before a
panel of the Board[1] convened on Wednesday, December 19, 1984, pursuant to an
Order on a Rule To Show Cause why disciplinary action should not be taken against
respondent upon the charge of a violation
of DR1–102(A)(4) of the Code of Professional Responsibility.[2]

The following findings of fact were made
by the panel:

1. Mary Jo Lewis Ryan was born on
November 15, 1953. She is now 31 years
old. Respondent is a graduate of the
University of Delaware, class of 1975,
and Villanova Law School, class of 1978.
She was admitted to the Delaware Bar in
1978 and began her first professional
employment as a lawyer for FDI in December, 1978. She was unemployed
from the time of her graduation until she
secured employment with FDI.

2. FDI is engaged in the business of
purchasing real estate in various states,
typically shopping centers, and selling
limited partnership interests in the real
estate. FDI, through various affiliated
corporations, manages the real estate
and handles the administrative needs of
the partners including preparation of periodic financial statements and annual
K–1 reports to be filed with each partner's personal tax return. The goal of
the company is to provide tax sheltered
investments to its clients.

3. In late 1981 FDI applied to the
Securities Division, seeking to register
securities in that State related to a partnership known as Franklin Associates.
Franklin Associates was a partnership
formed to purchase a shopping center in

---

1. The panel consisted of five members of the
Board, constituting a quorum under Rule 1(e)
of the Rules of the Board on Professional Responsibility.

2. DR1–102(a)(4) provides:
   A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

Tennessee. Respondent was on the legal staff at FDI and her duties included communicating with such governmental entities.

4. There was always pressure immediately prior to the completion of an offering. It was expected that the Franklin Associates deal would settle in early March, 1982. In late February, the respondent received a letter, addressed to Ms. Denise M. Doyle, Barley Mill Management Corp., an affiliate of FDI, dated February 23, 1982, from the Securities Division. The letter stated that the Franklin Associates offering would not qualify for registration in Tennessee. (See Board Exhibit D)

5. Respondent recognized that such a letter would jeopardize the early March settlement because of the time required to respond to the objections raised; therefore, she fraudulently altered the letter by typing a new body and photocopying over it to read that the securities were registered effective February 9, 1982. The alteration was done with the intent to deceive her employer, and all others who would come in contact with the offering of the partnership interest. Based upon the fraudulent registration the settlement went forward and the partnership shares were offered for sale through Prudential-Bache brokerage.

6. In early March, 1982, the respondent wrote to the Securities Division withdrawing the application as she feared she would be detected if further inquiries were received.

7. In July, 1982, the Securities Division called FDI inquiring about the distribution of the unregistered securities. That call resulted in an investigation which caused the respondent to confess her act to a co-worker, John McDonald, who in turn advised FDI of the occurrences.

8. As a result of the fraud, FDI suffered financial losses of nearly $300,000.00 because it was required to immediately rescind the deal by offering all partners the opportunity to return their shares.

9. Respondent was immediately dismissed as an employee of FDI.

DEFENSE

10. The respondent relies on Rule 20G asserting that she was mentally incompetent at the time of the occurrence in question.

11. In support of her defense she offers her own testimony and the written evaluations of a psychiatrist who saw her shortly after discovery of the fraud, and again in December, 1984.

12. The respondent testified to the following:

Her difficulty securing employment after law school. In fact, she did not get the job with FDI until after she had passed the Bar;

The high level of pressure which was imposed on employees, particularly when they were approaching a settlement;

The fact that she had witnessed other employees being admonished in view of other employees for errors they had made.

The fact that an attorney who had made an error on a document which resulted in a great deal of last-minute work prior to a closing was fired shortly thereafter.

That one time when she was bedridden with a broken foot, she was required to arrange to have work taken home so

That she had very little assistance or supervision from other staff members.

That she was asked to work extremely long hours, especially on one occasion when she had to go to New York where she worked from 8:00 a.m. to 2:00, or 3:00 a.m. for two or three consecutive days trying to get documents prepared for deals.

That she had been a teetotaler prior to her employment at FDI but had since began to drink as a result of the pressure.

That she feared her failure to get the securities registered would result in a failure of the deal and the loss of her job at a time when she was engaged to be married and had hopes of buying a home.

13. The psychological evaluation by Martin Plutzer, M.D., a psychiatrist from the Medical College of Pennsylvania, explains the respondent's actions as the result of her neurotic mental condition. She is described as being a compulsive individual with strong perfectionistic needs to please. She cannot say "no". Dr. Plutzer's report was marked as respondent's Exhibit B.

14. The follow-up psychological evaluation by the same physician relates that the respondent has overcome her neurotic tendencies, can now accept herself as less than perfect, and has more realistic expectations for herself which would preclude her from ever committing an illegal act. The report was marked as respondent's Exhibit C.

In Mitigation of Panel found:

The respondent offered evidence which shows that she entered a guilty plea to a charge of aiding and abetting the sale of unregistered securities in the State of Tennessee. The crime resulted in a sentence of unsupervised probation for 11 months and 29 days.

Although the facts of the incident were revealed to the State and Federal prosecutors for the State of Delaware, a Federal prosecutor for the State of Tennessee, and a representative of the SEC, there have been assurances that no further criminal charges will be pursued and indeed they have not been pursued in the 2.5 years since the incident.

Since her discharge from FDI, the respondent has enrolled in an accounting program at the University of Delaware. She expects to receive her degree in June, 1985.

The respondent has expressed her deep sorrow and regret over the incident. Although it is unlikely that the "cold" record will reflect the sincerity and intensity of her guilt and shame, such feelings were strongly felt by the members of the panel.

The record contains four letters, marked as respondent's Exhibits D, E, F, and G, wherein friends and co-employees attest to her good character and honesty.

The panel concluded and recommended as follows:

The respondent admits and the Board finds that she violated DR 1–102 in that she engaged in conduct involving a misrepresentation by knowingly and intentionally falsifying a document from the Securities Division which resulted in the sale of unregistered securities.

The Board finds no evidence to support the defense of mental incompetence.

The Board finds that the respondent is an honest person who has suffered deeply as a result of her extremely bad judgment in altering the document in question. We find no basis to believe that she will harm the public if a period of probation is imposed.

The Board accepts as fact her explanation that she did the alteration out of fear of failing, fear of humiliation, and fear of losing her job. While such fears are no excuse for misconduct, particularly by a professional, it is clear that she was overwhelmed by the pressures at FDI, and had no model for the type of independent judgment she needed to exercise when the crisis arose.

Pursuant to Rules 1C5 and 8A5 the Board hereby publically reprimands the respondent.

Pursuant to 1C6 and 8A4, the Board hereby recommends to the Court probation for two years. The terms of the probation shall be that:

The respondent shall not practice law unless she does so under the supervision of an attorney who has been a member of the Delaware Bar for 5 years. Prior to the commencement of

such employment, the supervising attorney must be approved by the Board.

The respondent shall advise Bar Counsel quarterly as to any legal activities in which she is engaged or is then intending to engage.

The respondent shall comply with the provisions of Rule 21.

The Board's imposition of public reprimand is subject to review by the Delaware Supreme Court pursuant to Rule 8A5.

The Board's recommendation of probation requires the consent of the respondent pursuant to Rule 1C6. Since it is a condition which limits her license to practice law during the probationary period, it can be imposed only by the Court.

Rule 9E provides that the respondent may file objections to the Board's report. Failure to file an objection to the recommendation of probation will constitute consent thereto.

The filing of objections shall have the effect of filing an appeal of the Board's decision to the Supreme Court.

Since Rule 9D provides that Board-ordered probation and reprimands are subject to review by the Court, regardless of whether objections are filed, the Board's report will be filed with the Court as soon as the record is complete.

No exceptions to the report of the panel were filed by respondent, nor were any briefs or memoranda filed on her behalf. At the hearing before the Court counsel for respondent pled for leniency and requested that the Court accept and approve the findings and recommendation of the panel. Emphasizing respondent's remorse and asserting that she has not at any time engaged in the practice of law for the three-year period following the discovery of her fraud to date, it is further noted that respondent is presently enrolled in the University of Delaware in an accounting course and expects to graduate during or shortly after the summer of 1985. Counsel

for the Board on Professional Responsibility agrees that the findings and recommendations of the panel should be affirmed.

We are satisfied that the record before us clearly supports the findings of fact and conclusions of law made by the panel of the Board on Professional Responsibility and affirm them. As previously stated, the respondent cannot and does not dispute those findings and conclusions. The only issue now before us then is whether to accept the recommendations of the panel or to impose other discipline. We have fully considered the mitigating factors brought to our attention by the panel and by counsel for respondent. We also have given due consideration to counsel's plea for leniency made to the Court at the hearing held in Dover on June 4, 1985. Additionally, we have duly considered the recommendation made by counsel for the Board on Professional Responsibility that we accept and affirm the recommendations of the panel. Having weighed all factors in aggravation and mitigation of the conduct of respondent which unquestionably involves moral turpitude within the meaning of DR1–102(A)(3) of the Code of Professional Responsibility, we conclude that the course of conduct involved requires nothing less than a period of suspension in addition to that voluntarily imposed upon herself by respondent.

Accordingly, IT IS ADJUDGED and ORDERED that respondent be disciplined as follows:

1. That Respondent be prohibited from engaging in the practice of law as a member of the Delaware Bar for a period of two years commencing on the first day of September, 1985 and ending on the thirty-first day of August, 1987.

2. That during such period, the Respondent shall not (a) share in any legal fees arising from clients or cases referred by the Respondent during the period of suspension to any other attorney, or (b) share in any legal fees earned for

services by others during such period of suspension; and

3. That during such period the Respondent shall make arrangements with counsel for the Board on Professional Responsibility for the payments of costs in the amount of $350.00. In the event the amount of said costs is not paid on or before August 31, 1987 the suspension shall remain in full force and effect until paid in full.

4. That this Opinion and Order be disseminated by Disciplinary Council in accordance with Rule 3 and Rule 14 of the Rules of the Board on Professional Responsibility.