999 A.2d 853 (2010)
In the Matter of a Member of the Bar of the Supreme Court of Delaware, Adam R. ELGART, Respondent.
No. 376, 2010.
Supreme Court of Delaware.
Submitted: July 21, 2010.
Decided: August 3, 2010.
*854 Frederick W. Iobst, Esquire, Disciplinary Counsel for the Board on Professional Responsibility, Wilmington, Delaware.
Charles Slanina, Esquire, Finger, Slanina & Liebesman, LLP, Hockessin, Delaware, for Adam R. Elgart.
Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.
PER CURIAM:
This is a Disciplinary Proceeding. A panel of the Board on Professional Responsibility ("Board") held a hearing involving charges of professional misconduct against the Respondent, Adam R. Elgart ("Elgart").[1] The charges related to Elgart's representation of one client. The Board has issued a final report to this Court ("Report").
The Board found that Elgart had violated various provisions of the Delaware Lawyers' Rules of Professional Conduct. Elgart has not filed any exceptions to the Board's findings. Therefore, the sole issue to be addressed by this Court is the form of discipline which should be imposed.

Alleged Violations of Professional Misconduct
This case involves the alleged failures of Elgart to properly represent his client, Lonnie Britford ("Britford"), in connection with a personal injury matter and subsequent failures to make disclosures to the Office of Disciplinary Counsel ("ODC") in connection with the disciplinary matter. The Board found that Elgart has violated the following Delaware Lawyers Rules of Professional Conduct (the "Rules"):
Rule 1.1 requires that "a lawyer shall provide competent representation to a client." The Board found that the Respondent violated Rule 1.1 by failing to represent Britford's interest with the legal knowledge, skill, thoroughness, and/or preparation necessary for the representation.
Rule 1.3 requires that a "lawyer shall act with reasonable diligence and promptness in representing a client." The Board found that the Respondent violated Rule 1.3 by failing to distribute settlement funds, meet with Britford, contact the insurance companies and prosecute Britford's claim or return Britford's calls in a timely manner.
Rule 1.4(a)(3) requires that "a lawyer keep the client reasonably informed about the status of the matter." The Board found that the Respondent violated Rule 1.4(a)(3) by failing to keep Britford informed with respect to the details of his matter with Progressive Northern Insurance Company ("Progressive").
Rule 1.4(a)(4) requires that "a lawyer promptly comply with reasonable requests for information." The Board found that the Respondent violated Rule 1.4(a)(4) by failing to comply with Britford's reasonable requests for information regarding his matter.
Rule 1.15(d) requires that "a lawyer shall promptly deliver to a client or third person any funds or other property that the client or third person is entitled to receive, and upon request by the client or third person, shall promptly render a full accounting regarding such property." The Board found that the Respondent violated Rule 1.15(d) by failing to distribute the funds due to Britford in a timely manner.
Rule 8.1(b) requires that "a lawyer in connection with ... a disciplinary matter, shall not: ... (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information" from a disciplinary authority. The Board found that *855 the Respondent violated Rule 8.1(b) by failing to disclose (a) information available to him in his office; or (b) information provided to him by Britford; and (c) information in response to ODC's subpoena duces tecum.

Board's Finding of Facts
The Board's findings of fact with respect to the underlying charges of professional misconduct as set forth in its Report, are in pertinent part, as follows:
The Respondent is a member of the bar of the Supreme Court of Delaware having been admitted in 1995. The Respondent was engaged in the private practice of law at Mattleman, Weinroth & Miller, P.C. ("Mattleman, Weinroth" and/or the "firm"), whose main office is located in Newark, Delaware at all times relevant to the Petition for Discipline. Although, the Respondent admitted that he was the managing partner of Mattleman, Weinroth in one paragraph of his Answer, in another paragraph he indicates that he was managing attorney, and not managing partner, which is consistent with his testimony.
Prior to his employment with Mattleman, Weinroth, the Respondent was employed in private practice with Marks, Feiner & Fridkin from 1995 through 1997 doing personal injury litigation.
On or about May 24, 2002, Britford retained Stephen Nowak, Esquire ("Nowak") of Mattleman, Weinroth to represent him in a personal injury matter arising out of a motor vehicle accident which occurred on May 11, 2002.
No personal injury lawsuit was filed on Britford's behalf arising from the May 11, 2002 motor vehicle accident, but there were settlement negotiations between Nowak and the insurance company, Progressive. A check in the amount of $15,000, the amount of Progressive's policy limits, and releases were sent to the firm on September 19, 2002. Britford was copied on the letter from Progressive transmitting the check to Mattleman, Weinroth.
Whether Britford received notice from Nowak that the Progressive check was received by the firm is unclear. The Respondent admitted that Britford did not receive notice from Nowak, but the joint exhibits contain a September 25, 2002 letter from Nowak to Britford advising him of the receipt of the check. Britford testified on direct examination that he recalled receiving the September 25, 2002 letter, but on re-direct, Britford indicated that he could not remember receiving the letter.
Nowak left Mattleman, Weinroth on or about December 14, 2002. The Respondent was a managing attorney of the firm at that time. The Respondent reviewed Britford's file following Nowak's departure.
Britford received a telephone call from the Respondent in early 2003 advising him that the Respondent had taken over the case from Nowak, a check for $15,000 had arrived, and a meeting with the Respondent to discuss the status of his case should be scheduled.
During a meeting between Respondent and Britford in 2003, the Respondent told Britford (a) $15,000 was inadequate compensation given Britford's surgery and medical bills; (b) after legal fees and expenses Britford would net about $9,000; (c) the Respondent would bring a claim against State Farm Insurance Company on his behalf for underinsurance coverage; and (d) the Respondent would also work on the worker's compensation case. Britford's portion of the settlement funds was not distributed to him before the check became void six months after the date of issue.
Having not heard from the Respondent for seven to eight months following the 2003 meeting, Britford called the Respondent in late 2003 to obtain information about his case. When he did not reach the *856 Respondent, he left a message requesting a return call. Britford did not receive a return call from the Respondent.
Between late 2003 and 2007, Britford repeatedly and unsuccessfully attempted to reach the Respondent by telephone and drove to Mattleman, Weinroth on a number of occasions to see the Respondent in person. During each telephone call to the Respondent and in person visit to Mattleman, Weinroth, Britford requested a return telephone call and communication from the Respondent regarding his matter. Britford received no communication from the Respondent as a result of these calls and visits to the firm.
Sometime in 2007 or 2008, Britford heard from the Respondent for the first time since their 2003 meeting. Throughout 2008, the Respondent spoke to Britford a "couple of times" indicating he "was trying to work something out with an adjuster".
In the Spring of 2009, Britford called the Respondent again regarding the status of his matter, but the Respondent failed to return his call.
On April 27, 2009, Britford's counsel in a different matter sent a letter to the Respondent on Britford's behalf requesting information about the status of his matter. The Respondent did not respond to the letter.
Britford filed a complaint with the ODC on or about June 10, 2009 alleging he had been unable to contact the Respondent for six months.
Thereafter, payment in the amount of $15,000 was made to Britford in September, 2009 by Mattleman, Weinroth & Miller, P.C.
The Respondent sent a letter to the ODC on July 3, 2009 with what he characterized as "a preliminary response" to the complaint by Britford. The Respondent indicated that Britford contacted him in January 2008, and they had spoken periodically since then. The Respondent did not disclose his telephone call and meeting with Britford in 2003. In a subsequent letter on July 27, 2009, the Respondent did not reference the 2003 telephone call and meeting stating, "[d]uring today's meeting with Mr. Britford, he brought to light that his claim was to have been one for worker's comp, initially, and an auto accident later. He also recollects coming to the office and speaking to me about his case after Mr. Nowak left the firm; but I cannot recall that meeting."
The ODC issued a subpoena duces tecum to the Respondent on July 28, 2009, and the Respondent produced documents by letter dated August 11, 2009. The Respondent failed to include in his response any "telephone logs or notes, meeting notes, calendar records" related to the matter handled by the firm or the Respondent on Britford's behalf. Additional discovery responses, including telephone notes and calendar logs were provided to ODC on January 29, 2010, February 3, 2010, and March 1, 2010.

Board's Analysis
The Board's conclusions of law with respect to the underlying charges of professional misconduct, as set forth in its Report, are as follows:
Elgart, in both his Answer to the Amended Petition for Discipline and his testimony, admits all of the material factual allegations upon which the request for disciplinary action is based or indicates that he cannot recall a fact but does not contest it. The testimony presented by the ODC of the complainant, Lonnie Britford, and his friend, Lukisha Normand, who accompanied Mr. Britford on a number of visits to Mattleman, Weinroth to attempt to speak to Elgart to learn about the status of his matter was uncontroverted. This, along with the admissions by Elgart of his faults, establish that the ODC *857 has met its burden of proving by clear and convincing evidence violations of Rules 1.3, 1.4(a)(3), 1.4(a)(4), 1.15(d), and 8.1(b) as set forth in Counts II through VI of the Amended Petition for Discipline.
Elgart denies that he violated Rule 1.1, arguing that the limited legal services he performed for Britford were performed competently. The Board finds that the ODC met its burden of establishing by clear and convincing evidence that Elgart violated Rule 1.1 by failing to distribute to Britford the insurance proceeds received from Progressive for approximately seven years after they were received. Although initially received by the firm at a time when another attorney, Nowak, represented Britford, Elgart testified that he reviewed Nowak's files at the time he was leaving. Britford's file was among these and Elgart produced a time entry for December 20, 2002 when he reviewed the file. Elgart also did not contest Britford's recollection of a telephone call from Elgart and meeting in 2003 during which the check and its disbursement were discussed. Although Elgart does not recall the 2003 call or meeting, he does recall contact with Britford in 2008 and knowledge of the then-stale check. Elgart further testified that although he contacted Progressive about obtaining a good check for Britford in the amount of $15,000 to replace the stale one, he failed to return the stale check and provide a signed release, as required by Progressive.

Sanctions Board's Weighing Process
In determining the appropriate sanction for lawyer misconduct, the Board was guided by the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"):[2]
The ABA framework consists of four key factors to be considered by the Court: (a) the ethical duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.[3]
The Board's weighing process was as follows:

1. Elgart's Misconduct.

Elgart's misconduct results from neglect of Britford's matter including: (i) a failure to promptly disburse funds received on Britford's behalf to him; (ii) a failure to return Britford's calls promptly; (iii) failure to keep Britford informed about his matter; and (iv) provide information Britford requested. In addition, Elgart engaged in misconduct by failing to disclose to the ODC information available to his office and information provided to him by Britford and by failing to respond timely to the ODC's subpoena duces tecum. Primarily, Elgart's misconduct falls into the category of a lack of diligence, which is ABA Standard 4.4. In addition, Elgart's violation of Rule 8.1(b) falls within ABA Standard 7.0.

2. The Lawyer's Mental State.

The ABA Standards suggest that this inquiry requires a determination of whether the lawyer acted intentionally, knowingly, or negligently. Although Elgart's *858 counsel argues that mental state is irrelevant to misconduct that amounts to a lack of diligence, the sanctions recommended for such offenses in ABA Standard 4.4, including subsections 4.41 through 4.44, are generally more and then less severe depending upon whether such conduct was intentional, knowing, or negligent, suggesting the applicability of state of mind. Elgart's testimony suggests negligence resulting from poor record-keeping. Elgart sporadically addressed Britford's matter from late 2002 through 2009. He would meet and/or speak with him and then neglect the follow-up required to protect Britford's interest.

3. Actual or Potential Injury.

Britford was injured by Elgart's action. He should have received the funds received on his behalf from Progressive in late 2002 or early 2003, but Elgart's misconduct resulted in a delay until September 2009 for the disbursement of funds. In addition, Elgart failed to pursue an underinsurance claim on Britford's behalf before the statute of limitations ran. Elgart acknowledges the injury to Britford.

4. Aggravating and Mitigating Circumstances.

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanctions to impose.[4]
The Board found the following aggravating factors as set forth in ABA Standard 9.22:
1. Elgart has a prior disciplinary record. Elgart consented to a private admonition in February 25, 2009. The misconduct that resulted in the discipline was a failure to properly supervise as managing attorney other attorneys and staff members of the firm in handling advance client funds and was unrelated to the misconduct found here. The prior disciplinary issue and sanction, however, occurred at a time when Elgart was in contact with Britford. Accordingly, it should have informed or heightened his diligence in meeting his ethical and professional obligations to his client.[5]
2. Elgart has substantial experience in the practice of law.[6]
The Board found the following mitigating factors as set forth in ABA Standard 9.22:
1. Elgart has no dishonest or selfish motive in committing the misconduct.[7]
2. Elgart's colleague testified about his good character and reputation in the practice of law.[8]
3. Elgart has expressed remorse for his misconduct.[9]

Board's Recommended Discipline
After weighing the ABA standards, the Board made the following recommendations for disciplining Elgart:
The ODC and Elgart are in agreement that the sanction of a public reprimand is appropriate for Elgart's misconduct. Moreover, the ABA Standards[10] and the *859 case law[11] support that result for lawyer misconduct involving diligence, competence and obligations to disciplinary authorities. The Board agreed that a public reprimand is an appropriate sanction.
The ODC further requests a sanction of two years of probation for Elgart to which Elgart objects. The Board agreed that probation is an appropriate sanction for Elgart's misconduct and recommends that the probation continue for a period of eighteen months.
The Board found the imposition of a probationary period appropriate based upon the following case law:
(a) Matter of Howard, 705 A.2d 243 (Del.1997). Mr. Howard received a public reprimand and a year of probation for violation of Rules 1.3, 1.4(a), 1.4(b) and 8.1(b) in two separate matters. Mr. Howard had no prior disciplinary record.
(b) In re Brodoway, 854 A.2d 1158 (Del. 2004). Ms. Brodoway had more rule violations, including violations of Rule 1. 15, which are not applicable here, but her violations included Rules 1.1, 1.3, 1.4(a) which are similar. She received a public admonition, two years of probation and conditions. Ms. Brodoway had no prior disciplinary history, but there was a violation of Rule 8.1(b).
(c) In re Callaway, 760 A.2d 162 (Del. 2000). Mr. Callaway received a public reprimand and a year of probation for a violation of Rule 1.2(a) and 1.3. Like Elgart, Mr. Callaway had a prior disciplinary record but no violation of Rule 8.1. Rather, it was noted that he provided full disclosure and cooperation with disciplinary authorities.
Finally, having considered all of the facts and circumstances, the Board agreed with the imposition of the following conditions requested by the ODC and agreed-upon by Elgart[12]:
 Elgart shall attend twelve hours of continuing legal courses in law office management.
 During the probationary period, Elgart shall not serve as managing attorney at any firm, including Mattleman, Weinroth.
 Elgart shall cooperate fully with the ODC in an expedited manner during the probationary period.
 Elgart shall pay the costs of the disciplinary proceeding pursuant to Rule 27 of the Delaware Lawyers' Rules of Disciplinary Procedure.

This Court's Review
In the proceedings before this Court, no exceptions to the Report of the Board were filed by Elgart.[13] Nevertheless, we have made a careful and independent review of both the factual findings and the conclusions of law that are set forth in the Board's Report. Our scope of review with regard to the Board's factual findings is to determine whether the record contains substantial evidence to support those findings.[14] We review the *860 Board's conclusions of law de novo.[15] Though we consider the Board's recommended sanctions helpful, they are not binding.[16]
We have considered the recommendations of Disciplinary Counsel and Elgart's attorney. We have considered the Board's Report. We have also considered the number and nature of Elgart's violations of the Delaware Lawyers' Rules of Professional Conduct. We are satisfied that the record before us clearly supports the findings of fact and the conclusions of law made by the Board in this case.[17] We also agree with the Board's recommended sanctions.
NOW, THEREFORE, IT IS HEREBY ORDERED that Adam R. Elgart be disciplined as follows:
1. That Elgart be publicly reprimanded.
2. That Elgart be placed on probation for a period of eighteen months beginning on August 3, 2010 and ending on February 3, 2012. During that period of probation:
a) Elgart shall attend twelve hours of continuing legal education courses in law office management.
b) During the probationary period, Elgart shall not serve as managing attorney at any firm, including Mattleman, Weinroth.
c) Elgart shall cooperate fully with the ODC in an expedited manner during the probationary period.
3. That Elgart shall pay the costs of the disciplinary proceeding pursuant to Rule 27 of the Delaware Lawyers' Rules of Disciplinary Procedure.
4. The Opinion and Order shall be disseminated by Disciplinary Counsel in accordance with the Rules of the Board on Professional Responsibility.
NOTES
[1] Bd. Prof. Resp. R. 9(d).
[2] ABA Standards for Imposing Lawyer Sanctions (1991 & Supp. 1992) (the "ABA Standards").
[3] Prior precedents reflect, inter alia, that this court has cited with approval the ABA Standards. See In re Hull, 767 A.2d 197, 200 (2001); In re Bailey, 821 A.2d 851, 866 (2003) (internal citations omitted); see also In Re McCann, 894 A.2d 1087, 1088 (2005); In re Fountain, 878 A.2d 1167, 1173 (Del.2005); In re Steiner, 817 A.2d 793, 796 (Del.2003).
[4] In re Bailey, 821 A.2d 851 (Del.2003).
[5] See ABA Standard 9.22(a) ("Aggravating factors include: (1) prior disciplinary offenses.").
[6] See ABA Standard 9.22(i) ("Aggravating factors include: ... (i) substantial experience in the practice of law.").
[7] See ABA Standard 9.32(b) ("Mitigating factors include: ... (b) absence of a dishonest or selfish motive.").
[8] See ABA Standard 9.32(g) ("Mitigating character or reputation.").
[9] See ABA Standard 9.32(l) ("Mitigating factors include: ... remorse.").
[10] See ABA Standard 4.43 ("Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client."); ABA Standard 7.3 ("Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.").
[11] See In Matter of Howard, 1997 WL 812632, at *1 (Del. Dec. 23, 1997); In re Wilson, 2005 WL 3485738, at *10 (Del. Nov. 9, 2005); Matter of McCoy, Del.Supr., 698 A.2d 409 (1997); In re Brodoway, Del.Supr., 854 A.2d 1158 (2004).
[12] Bd. Prof. Resp. R. 8(b).
[13] Bd. Prof. Resp. R. 9(e).
[14] In re Lewis, 528 A.2d 1192, 1193 (Del. 1987); In re Kennedy, 472 A.2d 1317, 1326 (Del.1984); Matter of Reed, 429 A.2d 987, 991 (Del.1981).
[15] Matter of Berl, 540 A.2d 410, 413 (Del. 1988).
[16] In re Reardon, 759 A.2d 568, 575 (Del. 2000).
[17] Matter of Sullivan, 530 A.2d 1115, 1117 (Del.1987); In re Lewis, 528 A.2d 1192 (Del. 1987); In re Sanders, 498 A.2d 148 (Del. 1985); In re Frabizzio, 498 A.2d 1076 (Del. 1985); see also In re Ryan, 498 A.2d 515 (Del. 1985).